[Crim. No. 1183.   Second Appellate District, Division One.—May 11, 1925.]

## THE PEOPLE, Respondent, v. ROBERT H. REID, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—REQUEST TO PRODUCE WRITINGS—MISCONDUCT OF DISTRICT ATTORNEY.—In this prosecution for obtaining money by false pretenses, growing out of the pretended sale by defendant to the complaining witnesses of the lease to an apartment house and the furniture and furnishings therein, the act of the district attorney in requesting defendant to produce the written contract covering the purchase by him of a portion of said furniture and furnishings and also a certain prior assignment of said lease to another person did not violate the rule that a defendant shall not be compelled to testify against himself, where, on each occasion, defendant, through his counsel, voluntarily and really eagerly presented the documents, and there was no objection to either request.

[2] ID.—EXAMINATION OF WITNESSES BY JUDGE.—In such a prosecution, it is not error for the trial judge to ask questions of the witnesses, for the purpose of elucidating or making clear any points that might otherwise remain obscure, where the questions asked are not incompetent or immaterial, or, in themselves, improper.

[3] ID.—BONA FIDE TENANTS—REPRESENTATIONS OF DEFENDANT—EVIDENCE.—In such prosecution, one of the alleged misrepresentations set forth in the information having been that the defendant represented the two vacant apartments as having been rented by *bona*

----

2.   Court's right to examine witnesses, note, 6 Ann. Cas. 477.   See, also, 28 R. C. L. 587.

*fide* tenants and deposits made thereon, it was not error to permit the introduction of evidence of the circumstances under which one of said tenants entered into and occupied one of said apartments, and showing that he was not a *bona fide* tenant as represented by defendant, and it was immaterial that the circumstances testified to occurred after the making of the alleged misrepresentations by defendant to the complaining witnesses.

[4]  ID.—OWNERSHIP OF LEASE—PREVIOUS REPRESENTATIONS OF DE-FENDANT.—In such prosecution, it was not error to permit an attorney to testify that, at a date prior to the pretended sale to the complaining witnesses, in a certain civil action in which defendant was one of the defendants, an attachment was issued and levy made upon tenants occupying the apartments in question and that the garnishments were released by him upon the assertion by defendant and a certain third party that the latter was the owner of the lease and entitled to collect the rents.

[5]  ID.—OWNERSHIP OF FURNITURE—FREEDOM FROM LIENS—EVIDENCE. In such prosecution, it having been alleged that defendant repre-sented that the furniture and furnishings were free and clear of liens, it was not error to permit witnesses for the prosecution to testify that a large portion of the furniture and furnishings in question were originally purchased from certain furniture companies under installment contracts, that thereafter, but prior to the pre-tended sale to the complaining witnesses, an arrangement was made whereby a designated bank took over the obligation of defendant to pay the balance due and, as part of that transaction, what in effect was a bill of sale was made of the furniture to that bank, that at the time of the pretended sale to the complaining witnesses the title to the furniture was in said bank, and that subsequently, payments being in default on account of the contract with said bank, steps were taken which resulted in the sale and removal of the furniture from the apartment house.

---

(1) 16 C. J., p. 891, n. 86.   (2) 17 C. J., p. 56, n. 16.   (3) 40 Cyc., p. 2439, n. 4.   (4) 25 C. J., p. 648, n. 23.   (5) 25 C. J., p. 648, n. 24.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mulligan & Ryzek for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HAHN, J., *pro tem.*—In this case the defendants, Robert H. Reid and Izeyl W. Reid, his wife, were charged by an information filed by the district attorney of Los Angeles County with the crime of obtaining money by false pretenses.

The allegations and misrepresentation as set forth in the information may be briefly summarized as follows: First, that defendants represented that they were the owners of a certain lease on an apartment house in the city of Los Angeles, which lease was free from any lien or encumbrance, and that the said defendants had the legal right to sell and assign said lease. Second, that they were the owners of the furniture and furnishings situate in the apartment house in question, free from any lien or mortgage. Third, that during the occupancy of the apartment house by the defendants under said lease, the several apartments had at all times been rented and occupied by permanent guests, with the exception that at the time of the negotiations between the defendants and the complaining witness two of the apartments were temporarily unoccupied, but that deposits had been made upon these two vacant apartments by prospective tenants. Fourth, that all the tenants who were then occupying the apartments were permanent tenants. Fifth, that the apartments had been and then were producing a total cash rental of $940 per month.

The information then proceeds to allege that each and all of the foregoing representations were false and untrue and were made by the defendants and each of them to the complaining witness, knowing such representations to be false and untrue and made for the purpose of inducing the complaining witness to purchase the lease and furnishings; and by reason thereof the defendants obtained from the complaining witness the purchase price by false representations.

Upon the trial, the jury returned a verdict of not guilty as to the defendant Izeyl W. Reid, and a verdict of guilty against her husband and codefendant, Robert H. Reid. Defendant Robert H. Reid now appeals from the order denying his motion for a new trial and from the judgment of the court.

The defendant in urging his appeal does not contend that there is not sufficient evidence to support the verdict of guilty, but contents himself with urging three grounds of

error occurring during the trial: First, certain misconduct
on the part of the district attorney during the course of
the trial; second, errors committed by the court in examin-
ing certain witnesses; and, third, errors committed by the
court in admitting certain evidence.

It appears from the evidence in the case that the defend-
ant Robert H. Reid and his wife were in possession of a
certain apartment house situate in the city of Los Angeles,
together with the furnishings therein contained. The de-
fendants desiring to sell their lease and furnishings, listed
the same with a real estate agent and, as a result of such
listing, the complaining witness entered into negotiations
with the defendants for the purchase of the lease and fur-
nishings. The complaining witness testified to several con-
versations had with the defendants, during which the al-
leged misrepresentations were made by the defendants,
and that she, the complaining witness, believing these repre-
sentations to be true and relying upon them, entered into a
contract for the purchase of the lease and furnishings, and
on April 1st consummated the negotiations by delivery of
the contract, payment of the money and entry into posses-
sion of the leased premises and furnishings.

Subsequently, she testified that she discovered that the
defendants did not own any of the furnishings, and that
certain parts of the furnishings, consisting of the linoleum
and the stoves, belonged to the owner of the building, while
title to practically all of the remaining furnishings was
in the Morris Plan Bank. Also, that the tenants occupying
the premises were not permanent tenants; that the two
apartments that were alleged to have been rented and de-
posits made thereon, were not rented at all; that the other
tenants were not permanent tenants, but temporary tenants;
and that the apartments had not been producing and were
not producing $940 per month, but only $885 per month;
and that at no time during the occupancy of the premises
by the defendants had all of the apartments been occupied
by tenants.

[1] As to the first allegation of error, that of misconduct
of the district attorney: This contention is predicated upon
the request or alleged demand made by the district attorney
in the presence of the jury upon defendant's counsel for a
certain contract of purchase of certain furnishings, and

also for a certain assignment of the lease of the apartments. It is the contention of defendant that the making of such request in the presence of the jury was prejudicial error, in that it violated the rule that the defendant shall not be compelled to testify against himself. It appears from the transcript that when Leo J. Neeson, a witness for the People and an employee of the Broadway Department Store, was on the witness-stand, he was questioned with regard to a certain contract between the Broadway Department Store and the defendant relating to certain furniture and furnishings sold by the Broadway Department Store and which constituted a part of the furnishings in the apartment house. After the witness had been interrogated as to the nature of the furniture and furnishings in question, he was asked if he had the contract in his possession. Upon his replying that he did not, that it was his understanding that it had been delivered to the defendant Reid, the court asked if Mr. Reid had the contract in court, and the attorney for Mr. Reid replied that they would make search for it during the noon hour; whereupon the district attorney made a request that the contract be produced. Thereupon the defendant's attorney replied: "We will be glad to produce it, if we have it." Upon reconvening of the court after the noon recess, the defendant's attorney produced the contract and delivered it to the district attorney, and the district attorney remarked: "I wish, your Honor, the record to show that counsel, Mr. Mulligan, is now delivering the contract to me." After its identification by the witness on the stand, it was offered in evidence; whereupon the defendant's attorney remarked: "The only thing about that is this: I don't think it is material, although we can't have any special objection to it, excepting the question of the materiality."

It will be noted from the foregoing that neither the defendant nor his counsel at any time made any objection to the request of the district attorney or the suggestion of the court that the lease-contract in question be produced. In fact, the only reasonable construction that can be placed upon the language used during the episode, and particularly upon the language used by counsel for the defendant, is that the defendant was ready and willing—yes, and even de-

sirous—of having the contract in question offered in evidence.

On another occasion a witness on behalf of the People, one G. Allen Mason, was on the stand. It appears that he is a brother-in-law of the defendant Reid. There was evidence in the case that on or about the 1st of February, previous to the sale of the lease and furnishings, both the defendant Reid and the witness Mason made the assertion that Reid had assigned the lease in question to Mason and that Mason was then the owner of the lease. There was also testimony from one of the tenants in the apartment house, Mrs. Muller, that defendant Reid had told her that he had assigned and transferred the lease to his brother-in-law, Mason, and that she, Mrs. Muller, should pay her rent to Mason; that in accordance with such instruction, Mrs. Muller did pay the rent for the months of February, March and April to Mr. Mason; and there is evidence, in addition to Mrs. Muller's statement, that Mason received these checks for the rentals of this apartment.

It also appears from the evidence in the case that the furniture in the apartments in question was sold early in July, following the sale of the lease and furnishings to the complaining witness, and that the sale was made by the witness Mason under an assignment which he claims to have had from his brother-in-law, the defendant, of the furniture in the apartment. All of these matters were pertinent to the issues in the case; and when the witness Mason was on the stand he was asked by the district attorney if he had in his possession the assignment made to him by the defendant and concerning which there had been testimony. The witness replied that he did not have the assignment, that it was in the hands of the lawyers; whereupon the district attorney inquired of the attorneys for the defendant if he might have the assignment, and one of the attorneys for the defendant replied: "I have the pleasure of handing it to you." The assignment in question was identified by the witness on the stand, and when the district attorney offered it in evidence, one of the attorneys for the defendant remarked: "We will consent to it; we were going to put it in ourselves, and it will save us the trouble; and we will ask counsel to read it to the jury, and the date of it."

It will be noted from the foregoing excerpts from the transcript, that in neither instance was there any compulsion exercised in securing the lease contract for the furniture, or the assignment. The assignment, it appears, was in the possession of one of the defendant's attorneys, and for the purpose of the consideration of the question we may consider it in the hands of the defendant himself. There was absolutely no objection offered by defendant's counsel when the inquiry was made by the district attorney as to the whereabouts of the two documents in question, or when the request was made by the district attorney of defendant's counsel for their production. Moreover, it clearly appears from the replies made by defendant's counsel to the queries and request of the district attorney and the suggestion of the court that the defendant was quite willing and even eager to produce the documents desired and have them read into evidence.

Upon this point counsel for defendant have indulged in extended quotations and arguments in support of the general proposition that a defendant cannot be compelled to testify or to furnish evidence against himself. The evidence, however, clearly shows that the defendant does not come within that rule, inasmuch as, through his counsel, he voluntarily and really eagerly presented the documents himself. In the light of the view which we take of the evidence on this point, it is unnecessary for us to consider, or even discuss, the authorities cited by the defendant on this point, except perchance to say that in all of the cases cited, it appears that the person from whom the document was requested or evidence sought, or his counsel, made vigorous objection to the request or demand.

[2] The second ground urged for reversal is based upon the assertion that substantial error was committed by the court when the court asked questions of certain witnesses. It does not appear from counsel's contention on this point that the questions asked by the court were incompetent or immaterial, or, in themselves, improper; but defendant seems to be aggrieved because of the fact that the court saw fit to ask any questions at all. It is a well-established custom, supported by both reason and practice, for the judge presiding at a trial, from time to time to ask questions of any witness that may be on the stand, for the purpose of elucidat-

ing or making clear any points that might otherwise remain obscure. We have carefully examined the record in this case, and it appears clearly that most of the questions asked by the court had to do with figures, as, for instance, the different amounts paid at different times, and also as to dates. Manifestly, the purpose in all of the questions was to make more clear matters that had previously been the subject of testimony, and, as frequently occurs, in dealing with figures a confusion often arises and the real bearing of the figures is not made clear. Furthermore, there was no valid objection made by counsel for the defendant at any time during the questioning by the court. It is true, at one place, counsel for the defendant does make the statement that, ''for the purpose of the record, we wish to object to the court questioning the witness''; but no ground of objection was made and, under the well-established rule, the objection had no force. Hence, not only, in our opinion, was the court well within its rights in propounding the questions which were asked of the witnesses, but there being no valid objection offered; the defendant cannot now be heard to complain.

[3] The third specification of error has to do with the introduction of certain evidence. The witnesses Lon A. Schimpf and his wife, Irene Schimpf, were permitted to testify to the circumstances under which they entered into and occupied one of the apartments. It appears that on or about the third day of April, the Schimpfs moved into one of the apartments that was not occupied at the time that the complaining witness took over the apartments, but which, according to the testimony of the complaining witness, the defendant represented to her had been leased and a deposit made thereon. The Schimpfs both testified that, a day or two before they moved into the apartment, the defendant, through a mutual acquaintance, had proposed to them that they come over and occupy one of the apartments while he and his wife were temporarily absent, which absence was necessary on account of the ill health of his wife; that the defendant stated to them that there would be no financial obligation on their part, except to pay for the gas and electricity used by them. In other words, they were to have the apartment free of rent for the period of a month. That pursuant to this invitation the Schimpfs

moved into the apartment on April 3d and remained there for one month. They further testified that they made no payment for rental, and that they had not signed any check in payment of the rental. There was evidence in the case that several days after the complaining witness had moved into the apartment house, the defendant came to her with several checks which purported to be payments by tenants for the April rentals, and that among these checks was one for $110 which purported to be the April rental from the Schimpfs for the apartment occupied by them. There is some conflict in the testimony as to whether this check was signed by Mr. Schimpf or not. Mr. Schimpf positively denies that he signed such a check, and there would appear to be no motive on his part to deny the writing of the check if he had given it. The Schimpfs further testified that when they moved into the apartment the defendant gave to them a receipt which purported to show that the Schimpfs had paid rental for the month of April for the apartment. The understanding on the part of the Schimpfs in receiving the receipt was that it might be necessary to show that they had paid their rent if anyone should raise the question. Defendant urges that error was committed by the court in permitting this testimony, as all of the circumstances testified to occurred after April 1st, and that only circumstances involving the representations made prior to April 1st and which were made as inducements to the complaining witness to enter into the contract in question, were competent and material.

It will be kept in mind that one of the alleged misrepresentations set forth in the information was that the defendant represented the two vacant apartments as having been rented by *bona fide* tenants and deposits made thereon. Inasmuch as the Schimpfs appeared and occupied one of these apartments, it was a pertinent question as to whether or not they were *bona fide* tenants as represented by the defendant. It was a proper question for the jury to determine whether the Schimpfs' occupation of the apartment for the month of April was a subterfuge or not. Manifestly the Schimpfs were not *bona fide* tenants.

[4] The defendant also contends that the court erred in permitting the witness William Jennings Bryan, Jr., to testify concerning a certain civil action in which the de-

fendant here was made a defendant, and out of which certain garnishments were issued and levied upon tenants occupying the apartments in question. That action was filed about February 1st, previous to the time when the complaining witness purchased the apartments. The witness Bryan was allowed to testify, over the objection of the defendant, as to certain conversations he had relative to the ownership of the lease covering the apartments. These conversations it appears occurred early in February, and were had with the defendant, and one conversation with the defendant's brother-in-law, G. Allen Mason. The witness Bryan testified that, acting as attorney for a Hollywood bank which was a creditor of the defendant, he had brought the action and levied garnishments on the tenants in the apartments on the theory that the lease belonged to the defendant here; that immediately following the levying of the garnishments the defendant appeared in his office and asserted that he was not the owner of the apartments; that the lease belonged to Mr. Mason, and urged that the garnishments be released so that Mr. Mason could collect the rentals from the tenants. The witness Bryan further testified that subsequently Mr. Mason appeared at his office, in company with the defendant, and made the assertion that he was the owner of the lease and entitled to collect the rents. Relying upon these assertions that Mason was the owner of the apartments, the witness Bryan testified that he caused the garnishments to be released. Manifestly this testimony went directly to the question of the ownership of the lease in question, and this testimony, together with the testimony of Mrs. Muller, a tenant of one of the apartments, that she had paid the rent for her apartment for the months of February, March, and April to Mr. Mason, and made these payments upon the direction of the defendant, he (the defendant) informing her that Mason was the owner of the lease, is clearly pertinent to the alleged representation of ownership.

[5] Another specification of alleged error relates to the testimony of the witnesses Sprague, Morrison, and Alton with reference to the ownership of the furniture and furnishings in the apartments. From the testimony of these witnesses it appears that a large portion of the furniture situate in the apartment house was purchased in October, 1923, from the Moneta Furniture Company and the Morrison Furni-

ture Company. The purchases were made on contract which provided for the installment payments. Some time prior to April 1, 1924, an arrangement was made whereby the Morris Plan Bank took over the obligation of the defendant for the payment of the balance due on the furniture, and as a part of that transaction, what in effect was a bill of sale was made of the furniture to the Morris Plan Bank. According to the testimony of these witnesses, on April 1st, and immediately prior thereto, and during the period of the negotiations between the defendant and the complaining witness which led up to the sale, the title to most of the furniture in question was in the Morris Plan Bank. This testimony was pertinent to the question as to whether or not the defendant did own the furniture free and clear of any lien, as he claimed, if the jury believed that he made the representation.

It furthermore appears from the testimony in the case that subsequently, payments being in default on account of the contract with the Morris Plan Bank, steps were taken which, early in July, resulted in the sale and removal of the furniture from the apartment house. These proceedings had their foundation in the contract and bill of sale which had been executed by the defendant to the Morris Plan Bank.

We have covered all of the points urged by counsel for the defendant on behalf of his appeal. It might be further added that we have carefully read the voluminous transcript of the record and feel that the evidence is abundantly sufficient to support the verdict.

For the foregoing reasons, the order and the judgment appealed from are affirmed.

Conrey, P. J., and Curtis, J., concurred.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 7, 1925.

All the Justices concurred.