[Crim. No. 1587. Second Appellate District, Division Two.—May 29, 1928.]

THE PEOPLE, Respondent, v. R. E. HARRINGTON, Appellant.

Henry G. Bodkin for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The appellant was accused by indictment of the offense of obtaining property by false pretenses in that he did with intent to defraud, falsely and feloniously represent to one Cora I. Greene that he was possessed of 6,000 shares of class A, common stock of the Postage Press Corporation, which said shares exceeded in value 600 shares of the capital stock of Monolith Portland Cement Company; that the Postage Press Corporation was backed by the United States government; that the machine put out by the Postage Press Corporation was used by a large number of business houses and that the stock was as good and safe as government bonds. It is also alleged that the defendant caused Cora I. Greene to believe these representations and thereby induced her, relying thereupon, to deliver to him the 600 shares of the capital stock of the Monolith Company of the value of $6,000 in exchange for 6,000 shares of the Postage Press Company stock, which latter was of no value whatever and there also follows the usual allegation that all of the representations were false and that defendant knew that they were false. A second count of the indictment charging the defendant with larceny was dismissed by the trial court. The jury returned a verdict of guilty upon the first count and this appeal is prosecuted from the judgment pronounced thereon and from the order denying defendant's motion for a new trial.

The first assault upon the judgment is upon the ground that the evidence is insufficient to sustain the verdict. The prosecuting witness testified that the appellant told her with respect to the stock of the Postage Press Corporation that "It was a very fine investment, that it was better than government bonds, and that it was backed by the government, . . . that they had a machine whereby they stamped envelopes; . . . that he showed" her "a long sheet that thousands of commercial firms, throughout the United States that were using that stamped envelope, purchased of them"; that the list of names "were business firms using it." A contract was introduced which reads as follows:

"This agreement made and entered into this eighteenth day of March, nineteen hundred and twenty-seven by and between Cora I. Greene, hereinafter referred to as party of the first part, and Patton and Company, hereinafter referred to as party of the second part.

"Witnesseth: Whereas, the party of the first part, is the owner and holder of six hundred shares of preferred stock in the Monolith Portland Cement Company, hereinafter referred to as first party's stock and is desirous of obtaining a larger income than she is now receiving and

"Whereas, the party of the second part, is conducting a business in the City of Los Angeles, State of California, and is in a position to use the aforesaid first party's stock to the mutual benefits of both parties to this agreement.

"Now therefore, in consideration of the sum of fifty-four ($54.00) per month payable on the seventeenth day of each month plus a sum equal to any and all dividends declared and paid on first party's stock and continuing for a period of one year or longer, the first party hereby assigns, transfers and sets over all her right, title and interest in and to the above mentioned first party's stock over unto the party of the second part for a period of not less than one year from date hereof or longer as agreed upon by both parties at the expiration of the aforesaid one year period. The party of the first part hereby agrees that the above mentioned first party's stock may be loaned or sold by the party of the second part or may be pledged by it, either separately or together with other securities either for the full market value or for a lesser or greater sum, or may be used by the party of the second part in making deliveries or making substitutions in its business, all without further notice to the undersigned, provided, however, the above mentioned first party's stock shall be delivered to the party of the first part on, but not before the expiration of this agreement, and the party of the second part shall not be obliged to return to the party of the first part the specific shares mentioned in this agreement, but may deliver in place thereof a like amount of the same securities.

"The party of the first part has obtained outside information and has made her own independent investigation of this agreement and has been informed and is of the opinion that its execution will be to her benefit.

"As collateral security for their performance of this agreement, the party of the second part will deliver to the party of the first part six thousand shares of the Class A Common (REH C. I. G.) Stock in the Postage Press Corporation which is personally owned stock which will be returned to the party of the second part at the expiration of this agreement or any additions hereto. It is understood that these shares are not to be sold or disposed of in any way or in any amount for any sum whatsoever but are a pledge and as such may be forfeited if the terms of this agreement are violated.

"This agreement contains the entire agreement between the parties hereto and all prior agreements are merged herein; and no person or persons has the power or any power to change or alter its terms, and any representatives other than those herein set out, and all representations upon which this agreement is based and not set out herein, are, by each of the parties hereto, hereby expressly waived.

> " (MRS.) CORA I. GREENE
> "Party of the first part
> "PATTON AND COMPANY
> "Party of the second part
> "By R. E. HARRINGTON."

Mrs. Greene also testified that she signed this contract after the appellant had explained in detail his familiarity with stock investments and after he had elaborated upon the success he had had in this field and how he could make her a lot of money if she would transfer her stock to him. She was apparently lured by the bait of a larger income, but wanted to be secured by other stock. She says: "I didn't know anything about that Postage Press Corporation stock, and he went on and told me what very fine security he was giving me and he seemed to leave with me the impression that he had other securities also that he could give me, but after speaking so finely on that particular Postage Press Corporation stock, it having the government backing it, and one thing and another, I did not see that anything else could excell it, so I took that." However, at the time the contract was executed the appellant apologized for not having the Postage Press stock with him and promised to send it to her shortly; that, although she trusted him, he never delivered it to her. He paid $54 a month for three

months and then refused any further payments. Testimony was also adduced that the stock of the Monolith Company had a market value of between $9 and $10 per share and that the Postage Press Corporation stock had no market value whatever.

In addition to the general contention that the evidence is insufficient appellant argues that it fails because of the following particulars: (1) It shows that complainant parted merely with possession and not with the title to her property; (2) The corroboration was insufficient; (3) The evidence does not support the allegation that it was an exchange of stock. It must be observed that the appellant's testimony, as might be expected in this character of charge, is at variance with that of the complaining witness, although he does in some respects corroborate testimony adduced by the prosecution. For example, the appellant testified that the stock of the Postage Press Corporation had no market value; that he told Mrs. Greene that he did not want "the Postage Press stock" he "was giving to her as security to be used by her, to be offered for sale or anything because" they "did not try to create a market for it because there was no reason for it"; that the reason he did not deliver the stock to her at the time of executing the contract was that he had sent it to Nevada for transfer on the books of the corporation; that he had other securities, but did not want to give her an active stock, one that was rising and falling on the market because he could make money out of such a stock; that the market value of Monolith stock was artificial and he was certain that it would drop. A Mr. Spriggs, who introduced the appellant to the complainant, testified that a few days before the introduction appellant asked him if he knew anyone who owned Monolith stock, stating that he had an angle on it whereby he could make some money. This witness also testified that Mrs. Greene asked for security and that appellant then told her about the Postage Press Corporation in which he and four or five people were interested, which company was organized for the purpose of manufacturing and selling a machine for stamping envelopes; that appellant showed Mrs. Green a list of business houses over the country which were using the stamped envelope; that appellant stated to Mrs. Green that he thought so much of it that he wanted to keep it; that the day after the

general conversation with Mrs. Greene the witness called upon her and secured the 600 shares of Monolith stock without indorsement. He testified that he immediately mailed the stock to the appellant and on the next day Mrs. Greene called upon him and was worried because he had sent it on and wanted the witness to wire for its return. On his assurance that the appellant would be back as soon as the stock could be back she was willing to wait. The appellant did return on the following day and after again going into the details of the arrangement and telling the merits of the Postage Press Corporation stock the contract was signed.

It seems obvious from a recital of the testimony that there is ample evidence to uphold the verdict of the jury. There can be no doubt but that the controlling factor which induced Mrs. Greene to part with her property, delivering it over to the appellant to do with as he pleased, was her belief that she would be amply secured by the stock of the Postage Press Corporation, a stock of such great value that the appellant exacted from her the promise not to sell or trade it to anyone, and by the fact that it was only one of many fine investments of which this gentleman of successful finance was possessed. That this was untrue and that he imposed upon her unfamiliarity with transactions of this character is evident from his own lips when he admitted that the latter stock had no market value. Also it might be asked why there was no delivery of this latter stock. The jury may have believed that it, as well as the other securities, existed only in his fruitful imagination. This would seem to establish the essence of the offense; deception practiced upon Mrs. Greene for the purpose of unfairly and unjustly obtaining her property (*People* v. *Wieger*, 100 Cal. 352 [34 Pac. 826]). It is sufficient if one material misrepresentation be proved (*People* v. *Fraser*, 81 Cal. App. 281 [253 Pac. 340]; *People* v. *Griesheimer*, 176 Cal. 44 [167 Pac. 521]). Here the testimony of the complaining witness unequivocally supports the verdict on more than one allegation and, as we have just observed, the contract, the appellant's testimony and the testimony of his witness Spriggs, together with other circumstances, corroborate the complainant sufficiently to meet all the requirements of section 1110 of the Penal Code, which provides that

in order to convict of the offense here charged there shall be either two witnesses or a witness and corroborating circumstances in the absence of a writing or false token. It is said in *People* v. *Wymer,* 53 Cal. App. 204 [199 Pac. 815] : "In this class of cases the circumstances connected with the transaction, the entire conduct of the defendant, and his declarations to other persons are proper matter for the consideration of the jury and may be looked to to furnish the corroborative evidence contemplated by the law. (*People* v. *Gibbs,* 98 Cal. 661 [33 Pac. 630]; *People* v. *Martin,* 102 Cal. 558, 565 [36 Pac. 952].)" To the same effect may also be cited *People* v. *Mace,* 71 Cal. App. 10–20 [234 Pac. 841], and *People* v. *Murray,* 87 Cal. App. 145 [261 Pac. 740].

Nor can the appellant successfully urge that the evidence is insufficient because it shows that complainant parted merely with possession and not with the title to her property. Assuming the necessity for the state to establish that she did part with title, it appears that the burden was successfully shouldered. According to appellant's testimony, he wanted the stock for the purpose of selling it at its then high price, anticipating that he could buy it back at a lower figure; that he had in the past by that process made from $40 to $50 a share on stock obtained from other parties. The contract recites that Mrs. Greene "hereby assigns, transfers, and sets over all her right, title and interest in and to" the stock for a period of not less than one year. It also provides in effect that appellant may sell, hypothecate, or dispose of the stock in any way he sees fit, being obliged only at the end of the time to produce a like number of but not the same shares of stock. It is difficult for us to understand how by this arrangement it can be seriously contended that appellant was not clothed with title. Suppose $600 in currency had been obtained instead of stock, to be dealt with as appellant saw fit and to be returned at the end of the time, it certainly could not be argued that the title to the specific money had not been transferred. To emphasize the situation here we direct attention to the fact that the situation might have been altogether different had the appellant been under obligation to return the identical shares, and had he not had the express power to transfer title to another.

■ In determining the contention that the evidence was insufficient because it failed to support the allegation of an exchange, we shall first assume that the testimony fails in this particular. It will then be apparent that there is a variance between the allegations and the proof and it becomes necessary to ascertain whether it is a material one. If not, we can say that the evidence is sufficient, if otherwise so, even though it fails to support the particular allegation. In *People* v. *Rabe*, 202 Cal. 409 [261 Pac. 303], we read: "It is the act of getting possession of or of obtaining property by false and fraudulent representations which the law punishes as a crime." In the earlier case of *People* v. *Cadot*, 138 Cal. 527 [71 Pac. 649], based upon the authority of *People* v. *Wasservogle*, 77 Cal. 173 [19 Pac. 270], it is determined that the elements of the offense are four, as follows: (1) An intent to defraud, (2) An actual fraud committed, (3) False pretenses used for the purpose of accomplishing the fraud, and (4) The accomplishment of the fraud by means of the pretenses used. In the instant case, bearing in mind that the promise to deliver to complainant 6,000 shares of Postage Press Corporation stock was not alleged as a false representation, the fourth element would have been proven upon showing that the appellant obtained possession and title to the 600 shares of Monolith stock by means of the false representations and it would be of no consequence whether it was upon promise to hypothecate with complainant 6,000 shares of Postage Press Corporation stock as security for the promise to return her the same or a different 600 shares of the former at some future date, or whether it was upon promise to exchange. Under these conditions we fail to find that the variance is material for the reason that it is obvious that an acquittal of the offense here charged would have been a complete bar to a prosecution for an offense framed in language indicating a promise to hypothecate the security. Taking into consideration also the proof here adduced, it is equally clear that the appellant was not misled to his prejudice in making his defense nor deprived of any substantial right. Since the test of whether a variance is material is made to depend upon whether the defendant is misled in making his defense or placed in danger of being twice in jeopardy, taking into consideration the proof introduced

against him (*People* v. *Terrill*, 132 Cal. 497 [64 Pac. 894];
*People* v. *Terrill*, 133 Cal. 120 [65 Pac. 303], and *People*
v. *Evanoff*, 45 Cal. App. 1081 [187 Pac. 54]), we are com-
pelled to say that there was not a material variance between
the allegations and the proof.

■ Appellant argues that the court erred in permitting
two witnesses to testify to the market value of the Postage
Press Corporation stock at the time of the trial rather than
at the time of the transaction, and also complains that with
one of these witnesses the proper foundation was not laid.
The appellant testified while he was on the stand that he
told Mrs. Greene that this "stock had no market value of
any kind," and again, that they "did not try to create
or cause a market for it because there was no reason for it."
It is immediately obvious, in view of this testimony, that
if there were error in the introduction of the testimony com-
plained of that appellant could not possibly have been
prejudiced thereby or complain thereof.

Lastly, the appellant asserts that the court erred in its
refusal to give and in the giving of certain instructions.
He specifies five refusals and eight instructions given. It
would unduly lengthen an opinion already giving the ap-
pearance of violating the form of desirable brevity to treat
each one of them separately. Suffice it to say that after a
painstaking examination of the first five specifications, two
of the instructions offered were not pertinent to the cause
on trial, that the other three were covered by instructions
given, and that one of them involved a misstatement of law.

■ We have also examined all of the instructions given
and find that it is not necessary to do more than call special
attention to the three last complained of. In the first of
these the court instructed the jury as follows: "You are in-
structed that the contract, Defendant's Exhibit A, is not
a false token or written document as is contemplated by the
statute requiring corroboration; but it is a circumstance to
be considered by you in determining whether or not the
testimony of Mrs. Greene is corroborated." Appellant's
objection to this instruction is that the latter portion is a
comment upon the facts. It is said in *People* v. *Martin,*
*supra,* where a similar offense was under consideration and
where a written contract had been executed: "The contract
is simply a piece of evidence in the case, and stands upon

the same plane as any other piece of evidence, and is weighed in the same scales.'' As we read the instruction, it simply told the jury that the contract was not a false token required by law, but only a piece of evidence to be considered by them as any other piece of evidence in determining whether there was any corroborating testimony. The court had given full and explicit instructions covering the necessity of corroborative testimony, in the absence of a false token or writing, and in view of those instructions we are of the opinion that the jury must have understood the instruction as we do.

The next instruction which appellant assails is one which sets forth *verbatim* section 1572 of the Civil Code, which section defines actual fraud and the fourth subdivision of which provides that ''A promise made without any intention of performing it'' constitutes actual fraud. Appellant, upon the authority of *People* v. *Green,* 22 Cal. App. 45 [133 Pac. 334], which says that ''to constitute a false pretense in law the misrepresentation must be of an existing or past fact, and cannot relate to the future, or be a mere promise to pay'' argues that it was error to include this fourth subdivision of the section in the instruction, and, further, that in view of the promise of appellant to pay $54 per month and also return a like number of shares at the end of the year, the jury was warranted in believing that the court intended to tell them that if these two promises were made without intention of performance, they should convict. However, in another instruction the court very properly said: ''You are instructed that if you find that Cora I. Green was not induced by representations falsely made by defendant, to believe that (1) 6000 shares of Postage Press Corporation stock exceeded in value 600 shares of Monolith Portland Cement Company stock; (2) that Postage Press Corporation was backed by the United States Government; (3) that the machine put out by Postage Press Corporation was used by a large number of business houses; (4) that the stock in said corporation was fully as good and safe as a United States Bond; or either or any of said alleged representations, and was then and thereby induced to part with her property but you do find that the promise made by defendant in the written contract to pay $54.00 per month, to pay her the dividends

accruing on the stock and to return said stock or an equivalent number of shares at the end of one year's time, was the main cause of inducing said Cora I. Greene to part with said stock, then it is your duty to acquit defendant of Count I.''

There were at least five other instructions which pointed their minds to the specific misrepresentations alleged in the indictment, and indicating that at least one of them must be proven and shown to be the inducing cause. It is difficult for us to believe that a reasonable juror could have placed the interpretation on a part of a general instruction defining fraud which counsel does. At least appellant could not possibly have been prejudiced by its statement in face of the care exercised to direct their minds to the allegations of the indictment.

It is apparent that the court was in error when it gave the following instruction: ''You are instructed that the allegation 'exchange' in the indictment may or may not be an essential allegation in stating the offense charged; it is for you members of the jury to say whether or not the element of exchange is an essential element in this case, and then whether or not an exchange took place.'' Whether the allegation of an ''exchange'' was or was not material or essential to the indictment was purely a question of law and not of fact and was a matter of no concern to the jury. The instruction should not have been given. Counsel has not, however, suggested to us any manner in which it might have prejudiced or affected any substantial right of appellant, and we can conceive of none, particularly in view of the conclusion to which we have come that there was not a material variance between the allegations and the proof on this angle of the case.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.