[Crim. No. 1705. Second Appellate District, Division Two.— September 19, 1928.]

THE PEOPLE, Respondent, v. ARTHUR E. KNOCKE, Appellant.

J. W. Kearby for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendant by information was charged with five different offenses of grand theft on all of which counts the jury returned a verdict of guilty. He appeals from the judgments pronounced thereupon and also from an order denying his motion for a new trial.

In support of the appeal counsel assigns four grounds as follows: (1) Misconduct of the trial judge consisting of asserted prejudicial and improper remarks during the course of the trial; (2) errors in the admission and exclusion of evidence; (3) insufficient evidence to support the conviction, including the argument that there is no corroborative evidence required by section 1110 of the Penal Code, and, (4) error in refusing to give certain requested instructions.

We shall follow the foregoing order in our consideration of the problems presented and turn first to what is claimed to constitute misconduct on the part of the trial court. The attorney-general points out that not one of the ten different remarks made by the trial judge was assigned as misconduct during the course of the trial nor was any effort made at any time to correct the error, or prevent prejudicial effect upon the jury, if any there was. Appellant recognizes the general rule that a claim of misconduct on the part of the trial judge will not ordinarily be considered on appeal, unless the party who complains has given the trial court an opportunity to correct the error or false impression, but asserts that the remarks here were of such a character that their harmful effect could not have been avoided by any retraction or instruction. He also asserts that had an endeavor been made to assign the remarks as error the net result would have been a vitriolic attack upon defense counsel, who it may be stated is not the attorney now representing appellant. The record in the case will not

support these claims. Selecting from the remarks those which come the nearest to being irremediable we take first an instance occurring at a time when a witness was asked to testify concerning the value of stock of which she was the owner as follows:

"Q. By deputy district attorney: What was the total value of all the stock that you turned over to Mr. Knocke and Mr. Murray?

"Defense Counsel: Object to that, no proper foundation laid.

"The Court: What foundation?

"Defense Counsel: She does not know the value.

"The Court: Why, Mr. ——, it is elementary that an owner may always testify as to value.

"Defense Counsel: The value of stock?

"The Court: The owner of anything may testify as to the value of anything he possesses. I am surprised that anyone who has gotten by the Bar Association Examination should raise that question. The objection will be overruled."

The trial judge was manifestly correct in the ruling, and while it would have been more in keeping with the decorum which should attend the trial of an action at law and more in harmony with the judicial dignity which should characterize the pronouncements of those to whom is entrusted the delicate power of sitting in judgment not to have expressed his surprise, it is undoubtedly true that there was no serious reflection upon counsel and none which could not easily have been rectified.

Again there had been considerable cross-examination concerning a memorandum used by the witness to refresh her recollection. After learning from this witness that she did not write the names on the particular memorandum at the time they were first mentioned to her, counsel returned to the subject as follows:

"Defense Counsel: Q. Did you write them down at that time?

"A. No, sir.

"Q. How did you remember them?

"A. I wrote them down at the time.

"Q. Where?

"A. I have a little paper here; they were new names to me and I did not want to forget them.

"Q. Were you suspicious at that time?

"A. No, but he was a stranger to me. I don't think I have the casualty company name in here. No, I didn't write them down. Mr. Knocke wrote them down for me many times on a slip of paper at my home.

"Q. Now you are changing your testimony to the effect that Mr. Knocke—

"The Court: Oh, I am going to insist on your being fair with the witness. She has not changed her testimony and she has not so testified. She said that she wrote them down and Mr. Knocke did.

"Defense Counsel: I apologize, your Honor, I don't mean to be unfair.

"The Court: Probably you do not, but sometimes one does things without meaning to."

It is apparent from the testimony just quoted that the witness was referring to a piece of paper or memorandum which she thought she had about her, probably in her handbag. We can even from the transcript visualize her as she looks for it and says: "I don't think I have the casualty company name in here." It is clear, although made more so in subsequent testimony, that she had written the memorandum used to refresh her recollection some time after the names were first written down for her by appellant. The trial judge was perfectly correct in his statement of the situation, and at least in the absence of an assignment, misconduct may not be predicated upon the occurrence. Counsel was not within his rights when he attempted to make an assertion of what the witness had done rather than to have asked a question to clear up the confusion if such actually existed in his mind.

The next assignment covers the following occurring during cross-examination:

"Defense Counsel: Do you remember lending Mr. Murray any money at any time?

"A. I have loaned money to Murray, yes.

"Q. That was during the ten months that you had known him?

"Deputy District Attorney: Objected to as immaterial.

"Defense Counsel: Why, I should say not.

"The Court: Now wait. If you cannot behave yourself in this court you better go and practice in the police court. Make your motion in a quiet manner.

"Defense Counsel: I apologize."

There then follows a discussion between court and counsel concerning its materiality, conducted, so far at least as appears from the transcript, without heat or friction. From the portion which we have quoted it is apparent that defense counsel was excited and by a display of vocal volume drew from the court a rebuke which rightly enough might have been more perfectly phrased, but which fails to exhibit any incurable error. In fact, counsel recognized his own error and made apology therefor.

With one exception the remaining assignments of instances of misconduct consists of discussions between the trial judge and counsel concerning the materiality of proffered testimony. There is nothing to indicate that the court was attempting to do more than gain an understanding of the theory upon which counsel was proceeding. No request was made that the jury be excused. No attempt was made to cure the error if it was committed, and nothing to indicate that appellant is brought within the exception to the general rule, although it is earnestly insisted that the admonition of the court to the appellant during one of these discussions does so operate. The appellant was on the stand and the judge and counsel were engaged in a discussion when the judge turned to appellant and said: "Now please keep quiet. That is about the third or fourth time you have attempted to talk to me from the witness-stand, and I don't like it. You are here to answer questions. If there is any more of that kind of talk you will be in jail over Saturday and Sunday for contempt of court." Unquestionably the rebuke was stern and undeniably also the appellant had transgressed. It may be that milder language would have sufficed and no doubt other words could have been chosen, more in keeping with judicial dignity and decorum, but some consideration must be given to the fact that under the strain of a trial and the repetition of an offense, even trial judges are not always able to choose their diction with the nicety of a Field or Marshall. We see no irremediable error.

■ Under the second reason given by counsel as grounds for reversal he assigns the reception of certain hearsay testimony. From an inspection of the record we cannot sustain this argument. The witness Aldahl, one of the people whose property was obtained, testified to efforts made by her to locate the appellant after she had failed to receive a promised dividend and also to efforts made by her to locate someone calling himself Dreyfuss, who had claimed over the telephone to be an employee of the Title Guarantee & Trust Company, and who in the same conversation over the telephone had recommended the appellant's associate Murray, and the company with which appellant and Murray claimed to be connected. The court, however, on motion for that purpose, very properly struck out all the conversations, and counsel's complaint therefor is not supported by the record.

■ Two of the assignments under this head seem to be based upon the theory that the trial judge has no right to interpose and ask questions of the witness. In neither instance was the witness the defendant, nor is it pointed out that the court repeatedly took the witnesses out of the hands of counsel as was the case in *People* v. *Boggess,* 194 Cal. 212 [228 Pac. 448]. In the present case we have one instance where four questions were asked and in the other three, in one it was for the purpose of endeavoring to fix a date, and in the other for the purpose of showing that the business of appellant was prominently advertised on his windows, leaving the jury to draw its inference as to whether the appellant, who had a conversation there, was acquainted with the nature of that business. While these actions are not assigned as misconduct on the part of the trial judge, we may observe the rule announced in *People* v. *Reid,* 72 Cal. App. 611 [237 Pac. 824], and *People* v. *Whitaker,* 68 Cal. App. 7 [228 Pac. 376], to the effect that it is not improper for the trial judge occasionally to ask a question for the purpose of elucidating or making clear any point which might otherwise remain in doubt.

■ Counsel also complains because the court struck out the testimony of a character witness who testified that he had known appellant in Los Angeles for a period of eight months and that he first knew him in Davenport, Iowa. This

witness testified that he had never discussed the appellant's reputation with anyone in Los Angeles. It is said in *People v. Cord,* 157 Cal. 562 [108 Pac. 511]: The ultimate fact to be established is his actual personal character, and it is considered that the general opinion of his character held by persons who know him is of probative value as evidence of his real character. Hence the witness to such reputation must, at least, be acquainted with the prevailing impression in the community, as disclosed by actions, conduct, or conversation relating to the character in issue, although it is not necessary that the witness testifying should know that the majority of the community have that impression.'' This case sufficiently disposes of appellant's claim in this particular.

We see no merit or substantiation in the remaining assertion that the court erred in excluding testimony. The record apparently does not support his assertion that the court refused to permit appellant to prove his good faith. The two objections which were sustained being related to a collateral issue, the bearing of which upon the question argued is difficult to comprehend. The rulings were correct.

The next assault upon the judgment is that the evidence is insufficient to support the verdict and that there is a total lack of corroboration required by section 1110 of the Penal Code. The record discloses that some time prior to July 21, 1927, discussions were had between Mr. Ridout of the Ridout Corporation and Franklyn A. Murray conerning a proposed arrangement whereby Murray would become employed by the corporation for the purpose of selling interests in buildings to be erected and sold. In a general way the method of operation was to raise as much money as possible on a mortgage and then to sell to other persons certificates of interest for the remainder, whereupon a trust was arranged declaring the interests of the various persons who would benefit upon the sale of the property and directing the trustee to make distribution accordingly. After some discussion it was determined by the participants in the discussion that Mr. Murray would have to operate independently of the Ridout Corporation, and during the time the discussions were progressing he filed a certificate that he was doing business under the fictitious name of Finance

Control Company. Mr. Ridout and Mr. Campbell of the corporation instructed their attorney to draw a proposed contract with the Finance Control Company and went ahead with other preliminary arrangements, and particularly did they prepare a report upon one of their ventures and some cards with Murray's name thereon, which cards were not, however, delivered to Murray. About July 20th, according to Mr. Campbell, the president of the Ridout Corporation, negotiations were terminated altogether and Murray was never employed. The employment of appellant by the Ridout Corporation was never in contemplation, although appellant testified that Murray stated in the presence of Campbell that he was going to employ him. This testimony of the appellant was denied by the witness Campbell. The record also discloses that during the months of August, September, and November the appellant, together with Murray, represented to Mary Donnell that they were employed by the Ridout Corporation for the purpose of selling interests in the ventures of the company; that in reply to a query by her concerning who composed the corporation the appellant said: "Mr. Walter B. Campbell, Mr. W. W. Ridout and Mr. Murray and myself," and that appellant took them to an apartment which was under course of construction on Bonnie Brae Street and told her that her money would go into that building. A witness living at the same house as Miss Donnell testified that appellant called there during August and stated in the presence of Miss Donnell and herself that he had affiliated himself with the Ridout Corporation for the purpose of selling ventures and attempted to interest her in the purchase, later suggesting that she assist in their sale and receive as her compensation a five per cent commission. She was in fact paid a commission upon the first sale to Miss Donnell. The testimony of Anna Aldahl, who made two purchases during the month of October, 1927, is to the same general effect except that appellant went so far as to represent to her that he and Mr. Murray had been associated with the Ridout Corporation for four years and that they had "sold over 60 buildings in nine months." The check given by Mrs. Aldahl on the first occasion was introduced and bears the indorsements of Franklyn A. Murray and the Acme Bonding Company, there also being

testimony to fully justify the inference that the money was spent for bail bond for Murray in connection with other charges pending against him. Campbell also testified that they had no thought, until the accidental finding of a brief case containing the chronological reports and other information which led them to the home of Mary E. Donnell, that Murray or appellant were engaged in selling any ventures.

Under this state of the record it cannot be seriously argued that the testimony of the complaining witness is lacking in corroboration, supported as it is by the testimony of an independent witness who took part in similar conversations with the appellant, and supported by all of the circumstances, such for example as the brief case containing information which led back to one of the victims, including the chronological reports prepared by the Ridout Corporation and referring directly to its method of doing business and the fact that almost identically the same false representation was used with different people. ■ The rule of law in this class of cases is that all the circumstances connected with the transaction, the conduct of the defendant, and his declarations to other persons may be looked to, to furnish the necessary corroborative evidence. (*People* v. *Harrington*, 92 Cal. App. 245 [267 Pac. 942], and cases there cited.)

The discussion on this phase of the case completely disposes of the contention that the evidence is insufficient to support the verdict and we are thus brought to a consideration of the complaint that the court erred in refusing to give certain requested instructions.

■ The court refused to give an instruction requested by the appellant to the effect that it is not sufficient to show that one is present when a theft is committed but that it must be shown that he has guilty knowledge of the theft attempted and thereafter to aid or abet in its commission. The jury were told in an instruction that if a person "acts in good faith according to what he believes to be right, the intent to defraud being absent, he is guilty of no crime." They were also told that one who aids or abets in the commission of an offense is to be punished as a principal, but that to aid or abet meant "to knowingly and with criminal intent, aid, promote, encourage or instigate by act or counsel,

or by both act and counsel, the commission of such criminal offense.'' It is apparent that the subject of the requested instruction was fully covered and no error may be predicated upon the refusal of the court to give it for the reason that it was covered by instructions given.

█ Complaint is made of the court's failure to give eight requested instructions, all dealing in one form or another with the rule of reasonable doubt. A complete answer to this entire argument lies in the fact that the court delivered an instruction in the words of section 1096 of the Penal Code, it being provided in the succeeding section (1096a) that when this is done no further instruction upon the presumption of innocence or defining reasonable doubt need be given.

We have examined all of the other instructions which were requested and not given and find that in substance they were covered by the court and that the jury were fully and fairly instructed upon all of the points of law therein suggested.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 18, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 15, 1928, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing herein is denied. In denying said petition we desire not only to approve but to emphasize the expressions of the district court of appeal with relation to the decorum which should attend the trial of actions at law, and the degree of judicial dignity and of judicial patience and impartiality as well, which should characterize the conduct and pronouncements of those to whom is entrusted the delicate power of sitting in judgment; and while we are in agreement with the appellate tribunal that the departure of the trial judge from these ideals in the instant case may not be held to amount to such misconduct as, in the state of the record, would suffice to justify a reversal, we have deemed this an apt cause and a timely

occasion to give expression of our disapproval of this and of all similar departures from the standards of judicial decorum and dignity which should attend the trial of all causes, and particularly all criminal causes, in the courts of this state.

All the Justices concurred.