[Civ. No. 2719. First Appellate District, Division Two.—February 28, 1919.]

LAURA G. POWELL, as Administratrix, etc., Appellant, v. J. A. POWELL et al., Respondents.

[1] APPEAL—QUESTION OF FACT—EVIDENCE—CREDIBILITY OF WITNESSES AND WEIGHT OF TESTIMONY.—It is within the province of the trial court to determine the credibility of witnesses and the weight to be given to their testimony; it is the duty of an appellate court to harmonize apparent inconsistencies in the statements of the witnesses, and to do this it will indulge in every reasonable presumption of fact.

[2] ID.—INHERENT IMPROBABILITY—LACK OF SUBSTANTIAL EVIDENCE.— To warrant an appellate court in determining there is no substantial evidence because of inherent improbability, there must exist either a physical impossibility of the evidence being true or a state of facts so clearly apparent that nothing need be assumed nor any inferences drawn to convince the ordinary mind of the falsity of the story.

[3] TRUSTS—FINDING AGAINST TRUST SUPPORTED BY EVIDENCE.—The evidence in this case is held sufficient to support findings and judgment that a transfer of stock was absolute and not charged with any trust.

APPEAL from a judgment of the Superior Court of Alameda County. W. M. Conley, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Howard Harron and Brewton A. Hayne for Appellant.

W. H. L. Hynes and Walter J. Burpee for Respondents.

BRITTAIN, J.—The plaintiff appeals from a judgment, the effect of which was to determine that 249 shares of the capital stock of Powell Brothers Construction Company belonged to J. A. Powell and R. V. Powell, and that the estate of Charles G. Powell, deceased, had no interest in them as the beneficiary of any trust.

Charles G. Powell formed the corporation defendant and J. A. Powell and R. V. Powell owned equal interests in it. The other defendants held qualifying shares to enable them to act as directors. Charles G. Powell died in 1913. For ten years he suffered from an incurable disease. He retired from active business in 1912. Prior to his retirement he had done nothing for the corporation for some time. In November, 1912, he transferred to his brothers 249 shares of the stock, and they issued to him one share to qualify him as a director and to permit his name still to be used as president of the corporation. In January, 1913, he transferred this single share to them and resigned as president. The appellant claims the transfer of the 249 shares was without consideration and upon a trust for the benefit of Charles G. Powell. The lower court found Charles G. Powell had sold 248 of the 249 shares and all the credits he owned against the corporation for ten thousand dollars paid to him by J. A. Powell and R. V. Powell, and that he subsequently sold to them the remaining share for one hundred dollars. The court further found that each of the transfers was *bona fide*, that neither was upon any understanding that the buyers should retransfer, that the transfers were absolute and intended so to be, and that the holdings were not charged with any trust.

As a part of a very long finding condensed in the statement just made the following language relating to the payment of the ten thousand dollars was used: "All the money used for said payment came from the safe deposit box of R. V. Powell who had almost one thousand dollars remaining therein after withdrawing the said ten thousand dollars therefrom." The appellant attacks this finding of the probative fact, arguing that since the finding of the ultimate fact of purchase depends on the finding of payment of ten thousand dollars, and the fact of payment depends on the money coming from the safe deposit box, if it should be demonstrated there was not ten thousand dollars in the box, the entire structure must fall.

However compelling this logic may be, its entire force rests upon the demonstration that the money was not in the box.

On behalf of the appellant it is next asserted that if the testimony of any witness is inherently improbable, it may be disregarded. Subject to many limitations this doctrine of inherent improbability is established by ample authority, and its existence has many times been recognized in this state. The elaborate attempt on the part of the appellant to show that the rule should be applied in this case falls far short of the requirements of the rule itself. The presumptions that every witness speaks the truth and that the judge of the trial court faithfully performs his duty in determining the weight and credibility of evidence are not to be ignored because of argument based on deductions drawn from inferences superimposed upon assumptions unwarranted by any fact.

A single illustration serves to show the tenuous character of the deductions upon which reversal is asked in this case. The bill of exceptions shows that in the accumulations of money in the safe deposit box was five hundred dollars, that amount having been handed to R. V. Powell by his wife more than a year prior to the payment of the ten thousand dollars. Prior to her marriage Mrs. R. V. Powell was a nurse, and as such she had rendered services to Mrs. Bellina, a sister of Powell. There was delay in the payment for services and Mrs. Bellina and Mrs. Powell finally agreed upon the sum of five hundred dollars.

On cross-examination Mrs. Bellina testified that she had deposited something over three thousand five hundred dollars in a savings bank, and paid therefrom to Mrs. Powell ''in twenty-dollar gold pieces the five hundred dollars which she gave her husband for his safe deposit box.'' Further cross-examination developed clearly that the witness remembered giving five hundred dollars to Mrs. Powell, but she had no recollection about going to the bank for it. On redirect examination she testified she was not sure of the source from which she got the money, and said she may have got it from money she received from the sale of her house.

The record of withdrawals from the bank was introduced and showed the particular five hundred dollars was not drawn from the bank. Mrs. Powell testified she received five hundred dollars from Mrs. Bellina, in five-dollar pieces, ten-dollar pieces, and twenty-dollar pieces, and gave the money to her

husband, who said he was going to put it in his safe deposit box.

From these facts it is first assumed that despite Mrs. Bellina's statement to the contrary the five hundred dollars could not have come from the sale of the house. It is next inferred that although both Mrs. Bellina and Mrs. Powell distinctly remembered the payment of five hundred dollars in gold coin, neither honestly could have been mistaken in regard to the denomination of any of the coin. Even though the payment of five hundred dollars might actually have been of $480 in twenty-dollar pieces and the remainder in one ten and two five-dollar pieces, if this fact were not remembered by a witness more than a year after the payment, under the theory advanced here, a positive statement that five hundred dollars was paid would be unworthy of belief. It is next deduced that "these intestine conflicts . . . are fatal to R. V. Powell's acquiring five hundred dollars for the box from his sister through his wife." It is finally argued that since this five hundred dollars and other sums upon similar inferences eliminated did not go into the box, it is mathematically demonstrated that ten thousand dollars were not in the box at the time of the purchase.

Upon such a diaphanous demonstration, this court is asked to apply the rule of inherent improbability, not alone to the evidence regarding the payment of five hundred dollars, but to all the evidence of all the defendants' witnesses. Confining the result of such an application of the rule to the evidence regarding the payment of five hundred dollars, it would necessarily follow that the three witnesses should be branded as perjurers. If upon similar demonstrations the rule were applied, numerous other witnesses would be similarly marked.

[1] It is within the province of the trial court to determine the credibility of witnesses before it and the weight to be given to their evidence. Even though the appellate tribunal might have reached a different conclusion, not having the opportunity to hear and see the witnesses, it is not permitted to substitute its own views for the conclusions of the judge who presided at the trial. If the record in any case shows there was no substantial evidence to support the finding of the lower court, the appellate court may, and it ought to, set it aside. [2] To warrant it in determining there is no substantial evidence because of inherent improbability, there must

exist either a physical impossibility of the evidence being true, or such a state of facts so clearly apparent that nothing need be assumed nor any inferences drawn to convince the ordinary mind of the falsity of the story. The appellate court will not indulge in lengthy and dubious computations, nor seek far for a reason, no matter how ingenious may be the argument by which it is urged, to determine that witnesses have committed perjury. It is its duty, if possible, to harmonize apparent inconsistency in their statements, and to do this it will indulge in every reasonable presumption of fact.

[3] The entire record in the present case discloses ample evidence to support the particular finding of probative fact, as well as the findings of ultimate facts made by the judge who tried the case. The views of this court are in accord with those findings.

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 28, 1919.

All the Justices concurred.