[Civ. No. 9361. Second Appellate District, Division Two.—October 11, 1934.]

STELLA L. HUGHES, Respondent, v. JOHN QUACKEN-BUSH et al., Appellants.

George D. Higgins for Appellants.

George L. Greer for Respondent.

YANKWICH, J., *pro tem.*—Following the verdict of a jury, plaintiff had judgment for $7,500 for personal injuries suffered by her when an automobile in which she was riding as a guest collided with an automobile owned by the defendant C. H. Quackenbush and operated by the defendant John Quackenbush, his minor son. As a condition to the denial of a motion for a new trial, the trial court reduced the judgment to $5,000. Before us, is an appeal by all defendants from the order reducing the judgment, as well as an appeal by John Quackenbush from the order denying his motion to set it aside. The latter motion was based upon the ground of minority, and followed a disaffirmance made by him on April 17, 1933.

It is claimed that the evidence is insufficient to sustain the judgment, because negligence was not shown.

On January 18, 1931, the plaintiff was riding as a passenger in the automobile (a Dodge sedan) operated by Ralph W. Kerr, her son-in-law. The automobile was struck by another automobile (a Ford cabriolet) driven by John Quackenbush, and owned by C. H. Quackenbush, his father.

The Quackenbush automobile struck the left side of the Kerr automobile, at the left rear door, with such force as to tip it, with its four occupants. The radiator ornament of the Quackenbush automobile made a hole in the left rear door of the Kerr automobile. The Quackenbush automobile, as one witness put it, "mounted up on its side (the Kerr automobile side)". Kerr, in describing what happened at the time of the impact, stated:

"When they hit they were stepping on the gas, and had so much force it raised both cars up in the air. The front wheels went up in the air, and the wheels on the left side of my car went up in the air, then they took their foot off the throttle and the cars came back on the ground again without tipping over."

At the time of the impact, the Kerr automobile was being driven in an easterly direction on Santa Monica Boulevard, in the city of Los Angeles, while the Quackenbush automobile was being driven in a southerly direction on Gower Street. The collision occurred in the intersection, after the front of the Kerr automobile had reached a point across the center of Gower Street. The Quackenbush automobile was being driven at a speed of twenty-five miles an hour, and the Kerr automobile at a speed of fifteen miles an hour, at the time of the impact. It is admitted that John Quackenbush was in the automobile, but he denies that he actually drove it. Upon this issue, as upon many others, there is conflict. There is the positive testimony of Kerr that the automobile was driven by "the Quackenbush boy". This was also the testimony given in a deposition by Norman W. Arnos, the other young man in the Quackenbush automobile. A police officer, Thomas Maloney, testified that, after the accident, John Quackenbush gave his own name as that of the driver. The fact was also admitted in the answer. The fourth special defense, after pleading the negligence of the driver of the Kerr automobile as the sole cause of the injury, concludes with this phrase, "as to cause the same to strike and come in collision *with the automobile driven by the defendant, John Quackenbush*". (Italics added.)

As to the action of the two boys in the automobile prior to the collision there is the testimony of Kerr that when the Quackenbush automobile made a boulevard stop, "the two boys were sitting in the car facing each other talking", and

"didn't look" at all, in the direction of the other automobile. John Quackenbush who was driving the car, was "looking to his right, facing the boy in the seat with him". "They were laughing and talking." The testimony of Eppie Hughes Kerr is to the same effect. William Cox, who was driving an automobile behind Kerr's automobile, testified that after the Ford automobile had stopped at the intersection, it started forward at about twenty or twenty-five miles an hour,—"just jumped forward". The defendants placed in the record, for impeachment purposes, a portion of the testimony of this witness at a prior trial, in which, in describing the incident, he stated that the Ford automobile started forward, "just like a shot out of a gun".

The Kerr automobile entered the intersection first.

Many of the facts just stated were disputed by the defendants. The jury's verdict in favor of the plaintiff is a finding that the version of the occurrence told by her witnesses is true. So, in stating the evidence for the purpose of this opinion, we need not take into consideration the instances wherein these witnesses were contradicted by others, or even wherein they may have contradicted themselves. That conflict was for the jury to resolve. From these facts, it was easily inferable that the young men had been too busy talking to each other to observe the other automobile and had darted heedlessly into the intersection, oblivious of the ordinary rules of caution.

■ All intendments are in favor of the verdict of a jury arrived at upon conflicting testimony. Even when the facts are undisputed, if contradictory inferences can be drawn from them, an appellate court will not substitute other inferences for those of the jury. (*Ketelhut* v. *Gunther,* 100 Cal. App. 409 [279 Pac. 1083]; *Coats* v. *Hathorn,* 121 Cal. App. 257 [8 Pac. (2d) 1038].) This is the rule even where the reviewing court might have reached a different conclusion. (*Conness* v. *McCarty,* 216 Cal. 415 [14 Pac. (2d) 507]; *Foxe* v. *Southern Pac. Co.,* 121 Cal. App. 633 [9 Pac. (2d) 514]; *McGlothin* v. *Larussa,* 122 Cal. App. 324 [10 Pac. (2d) 116].) ■ Of course, testimony which is inherently improbable may be disregarded. (*Neilson* v. *Houle,* 200 Cal. 726 [254 Pac. 891].) But to warrant such action there must exist either a physical impossibility of the evidence being true or its falsity must be

apparent, without any resort to inferences or deductions. (*Powell* v. *Powell,* 40 Cal. App. 155 [180 Pac. 346]; *Stahmer* v. *Stahmer,* 125 Cal. App. 132 [13 Pac. (2d) 833].) As said in *Powell* v. *Powell, supra:*

"The appellate court will not indulge in lengthy and dubious computations, nor seek for a reason, no matter how ingenious may· be the argument by which it is urged, to determine that witnesses have committed perjury. It is their duty, if possible, to harmonize apparent inconsistencies in their statements, and to do this, it will indulge in every reasonable presumption of fact."

This is especially true in automobile accidents. Modern psychological experiments have shown that due to the quickness with which an accident happens, those who see it, and those who participate in it, may not get clear impressions. If, after trial, an appellate court attempted to weigh every one of these impressions which may seem contradictory, by the rules of the exact sciences, few verdicts would stand. In *Nielson* v. *Houle, supra,* the court quotes with approval a rather lengthy excerpt from the opinion of this court in *Austin* v. *Newton,* 46 Cal. App 493 [189 Pac. 471], written by Mr. Presiding Justice Finlayson, which contains the following language:

"It is not to be supposed that witnesses to an accident that happens in the twinkling of an eye should accurately observe all the details. Much less is it probable that one who is injured in the accident, and rendered unconscious, should be able to give a correct account of all the quickly happening events. It cannot be laid down as a rule of law that a plaintiff in a personal injury case cannot recover unless the court can see that every detail of the accident, as testified to by the plaintiff and his witnesses, is consistent with admitted physical facts and the laws of science. Undoubtedly where some of the details of an accident, as described by a witness, conflict with admitted physical facts, the whole story of the accident, as given by that witness, may be entirely discredited; but, as an appellate court, we cannot reverse unless we can say that the admitted physical facts are wholly .irreconcilable with the negligence alleged in the complaint. To entitle respondent to an affirmance, it is sufficient if it can be said that, notwithstanding the admitted physical circumstances, the accident could have

been caused by the negligence charged in the complaint. We hold that the reasonableness of plaintiff's version of the accident was a question of fact for the trial court, and that its finding thereon is conclusive here.'' (See *Finch* v. *Willmott,* 107 Cal. App. 662, 666 [290 Pac. 660].)

If, notwithstanding inconsistencies, and admitted physical facts, the accident *could have been caused* by the negligent act of which the plaintiff complains, the verdict of the jury will be sustained. (See *Wickman* v. *Lowenstein et al.,* 136 Cal. App. 282 [28 Pac. (2d) 681].)

The evidence in the record, which we have read in full from the reporter's transcript, the appellant having attached a portion of it only to the brief, warranted the conclusion that there was negligence in the operation of the Quackenbush automobile.

Counsel for the defendants attempt to discredit the witness Kerr and charge him with various negligent acts. If the negligence of Kerr and Quackenbush concurred in the result, the plaintiff, as a passenger, who was free from negligence, may nevertheless recover from the defendants. (*Kelley* v. *Hodge Transp. Co.,* 197 Cal. 598 [242 Pac. 76]; *Fishman* v. *Silva,* 116 Cal. App. 1, 7, 8 [2 Pac. (2d) 473].)

Starting with the statement of Kerr that his automobile entered the intersection first, counsel for the defendants attempt to demonstrate, by mathematical computation, and by the experiments of some of the witnesses, that the statement (and others based upon it) could not possibly be true. They would, therefore, discredit his entire version of the occurrence. The argument, we feel, is one which might more readily have been (and, no doubt, was) addressed to the jury which heard the case, rather than to a reviewing court.

The sufficiency of the evidence to sustain the verdict and judgment is also attacked upon the ground that the action was based upon the provisions of section 62 of the California Vehicle Act, covering the liability of parents for the negligence of their minors, whose applications for license they sign. It is argued that the testimony shows that John Quackenbush was the owner of the car. From this premise, it is argued that the father could not be liable. Then it is argued that the minor is not liable because he was not driving the automobile and the driver was not shown to

have driven the car under his (the minor's) license. [5] The argument overlooks the fact that the complaint,—while alleging the signing of the application by the parents, C. H. Quackenbush and Jennie Quackenbush,—also alleged that John Quackenbush was the agent and employee of "the defendants". This allegation, if proved, was sufficient to establish liability either under subdivision (d) of section 62 of the California Vehicle Act, or under section 1714¼ of the Civil Code.

There was testimony which tended to prove that the automobile belonged to the elder Quackenbush, and that young Quackenbush operated it, at the time of the accident. He and his young friend had been at C. H. Quackenbush's place of business, working on the automobile. These facts were sufficient to create a presumption of agency, and justified the inference that the son was using the automobile as the agent of the father. (*Perry* v. *McLaughlin,* 212 Cal. 1, 14 [297 Pac. 554].)

Section 1714¼ of the Civil Code makes the owner liable for the negligence of any person using and operating his automobile with his implied or express permission. Our courts have held the words of the section broad enough to make the owner liable for the negligence of a person to whom his permittee has entrusted the automobile temporarily. (*Sutton* v. *Tanger,* 115 Cal. App. 267 [1 Pac. (2d) 521]; *Pohle* v. *Bolinas Beach Realty Co.,* 130 Cal. App. 704 [20 Pac. (2d) 730].) Courts elsewhere have interpreted provisions in similar statutes in a similar manner. (See *Kerns* v. *Lewis,* 246 Mich. 423 [224 N. W. 647]; *Arcara* v. *Moresse,* 258 N. Y. 211 [179 N. E. 389].)

And while it is true that a parent cannot be held liable under the provisions of subdivisions (a) and (b) of section 62 of the California Vehicle Act if the car is driven by the minor's permittee without the parent's permission (*Lundquist* v. *Lundstrom,* 94 Cal. App. 109 [270 Pac. 696]; *Bradford* v. *Sargent,* 135 Cal. App. 324 [27 Pac. (2d) 93]), where, *as here,* agency exists, the liability exists, whether under subdivision (d) of section 62 of the California Vehicle Act, or under section 1714¼ of the Civil Code. And it attaches to the minor as well as to the parent.

The claim of insufficiency of the evidence based upon this ground must, therefore, fall.

█ Appellants assign as error certain rulings and actions of the court, relating to the admission of testimony, the conduct of the trial and the giving and refusal of instructions. While being examined by counsel for the plaintiff, under the provisions of section 2055 of the Code of Civil Procedure, the defendant John Quackenbush was asked whether, at the police station, "he had talked to anyone". To which he answered: "I had a talk with the insurance adjuster at the time." The answer was stricken upon the motion of the defendant and the jury instructed to disregard it. One of plaintiff's witnesses, William Cox, while describing what took place after the accident, stated that he asked the defendant if he was insured and that the defendant had replied affirmatively. This· reference to insurance was also stricken, and the jury instructed to disregard it. While courts have condemned repeatedly attempts to bring before a jury the fact that insurance exists, their condemnation extends only to cases where there is an "avowed purpose and successful attempt" to bring the fact before the jury. It does not extend to cases where the information comes in, incidentally, in attempting to prove other facts, or where the record does not show that the particular answer was sought or anticipated. (*Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954]; *Hodge* v. *Weinstock, Lubin & Co.,* 109 Cal. App. 393, 403 [293 Pac. 80]. And see *Dermer* v. *Pistoresi,* 109 Cal. App. 310, 315 [293 Pac. 78].)

The answers to which objections were made here come within these exceptions.

█ Defendants complain that the plaintiff brought before the jury the fact of her poverty. Such fact, of course, is not admissible. (*Steinberger* v. *California Electric Garage Co.,* 176 Cal. 386, 391 [168 Pac. 570]; *Perez* v. *Crocker,* 86 Cal. App. 288, 292 [260 Pac. 838]; *Crabbe* v. *Rhoades,* 101 Cal. App. 503, 513 [282 Pac. 10].) However, an examination of the testimony elicited from the witnesses on the subject shows that they were merely describing the nature of the plaintiff's work, the fact that she had the care of a child, and that, as a result of the disability, she was unable to perform certain acts. These facts bore clearly upon the extent of the injury. If, incidentally, they also disclosed her humble status, and the salary she was receiving, the result was incidental and such

as could not be avoided. This is not the appeal to sympathy through a direct showing of poverty which courts denounce.

One of the defendants, Norman Arnos, having stated that he had been mistaken concerning certain matters in a deposition, the court asked several questions aimed to elicit from the witness the date and circumstance of the discovery of the mistake in the deposition. We see no error in this action. It is the rule, even in criminal cases, that the trial judge may, by proper questions, seek to clarify a fact, or to elicit the truth. (*Atchison* v. *Hulse*, 107 Cal. App. 640, 645, 646 [290 Pac. 916]; *People* v. *Golsh*, 63 Cal. App. 609, 614 [219 Pac. 456]; *People* v. *Knocke*, 94 Cal. App. 55, 61 [270 Pac. 468].) Of course, when the examination is of unusual length, and is without apparent necessity, courts condemn it. (*People* v. *Boggess*, 194 Cal. 212 [228 Pac. 448]; *People* v. *Keys*, 82 Cal. App. 602 [255 Pac. 897].) The examination in the instant case related to an evident contradiction between the testimony of the witness given at the trial and his testimony given in the deposition. It does not seem to have been lengthy or repeated. Furthermore, the defendants interposed no objection. Hence they are not in a position to complain. (*People* v. *Reid*, 72 Cal. App. 611, 618 [237 Pac. 824]; *Atchison* v. *Hulse, supra.*)

The deposition of the same witness, Norman Arnos, who resided out of the state, was taken. Arnos (as already stated) was present at the trial and testified as a witness for the defendant. After using the deposition for the purpose of impeachment, the plaintiff, over the objection of the defendants, offered it in evidence. The deposition of a witness out of the state is not subject to the limitations which apply to some of the depositions of a witness within the state. (See Code Civ. Proc., sec. 2032.) Such deposition may be used by either party. (Code Civ. Proc., sec. 2028.)

The fact that the deposition was first used for impeachment did not deprive the plaintiff of the right to offer it in its entirety.

The rather extended discussion of facts which precedes makes it unnecessary to discuss in detail the criticisms of the instructions given by the court. Many of these criticisms are based upon conclusions as to facts which go counter

to the conclusions reached by the jury, upon contradictory testimony. We have read the instructions as a whole. They state fully and correctly the law of the case.

▮ Referring more particularly to the instructions excepted to, we find no error in the instruction which stated that the negligence of Kerr would not bar recovery, "unless his negligence, if there was any, was the sole and only cause of the collision between the automobiles". This was a correct statement of the law, in simple language. (*Fishman* v. *Silva*, 116 Cal. App. 1, 7, 8 [2 Pac. (2d) 473].)

▮ Several instructions are complained of because they referred to "the operation" of the automobile by John Quackenbush. They were followed by an instruction given by the court of its own motion, in which the question whether the automobile was actually driven by John Quackenbush was submitted to them as a question of fact. This instruction stated correctly the liability arising out of the relationship between the boy and his father. The erroneous assumption in it that the automobile was owned by John Quackenbush was harmless. The court stated correctly the rule as to the right of way at intersections, in the language of the California Vehicle Act.

Some of the instructions requested by the defendants which were refused were given elsewhere. ▮ Others, which sought to shift the responsibility for the injury upon the driver of the Kerr automobile did not state the law correctly. They lacked the qualification that recovery might be had even if the negligence of the defendants merely contributed to the injury, or the injury was the result of the concurrent negligence of the driver of the automobile in which the plaintiff was a passenger and the defendants. (*Springer* v. *Pacific Fruit Exchange*, 92 Cal. App. 732, 738, 739 [268 Pac. 951]; *Fishman* v. *Silva, supra.*)

▮ Certain remarks of the court are assigned as misconduct. During the examination of the witness Kerr he stated: "Well, I was driving along the car tracks and saw them pull up and stop. I kept right on going, because I had plenty of time to go across." Counsel for the defendant requested that the statement, "I had plenty of time to go across," be stricken. Argument between counsel ensued, the plaintiff's counsel arguing that the statement was not a conclusion, while the counsel for the defendants insisted

that it was. The court thereupon commented: "The witness evidently thought he had plenty of time to go across if things had happened in the normal way. It does involve a conclusion, however." Thereupon, the court ordered the statement stricken. It is evident that the court was not commenting upon the evidence, but was merely restating the substance of the testimony, in order to determine whether it was a conclusion. When it struck the statement as given by the witness, its action carried the restatement also. Furthermore, no exception having been taken by the defendants at the time, or assignment of error made, they cannot complain. (*Hughes* v. *Duncan*, 114 Cal. App. 576, 579 [300 Pac. 147]; *Simpson* v. *Steinhoff*, 131 Cal. App. 660, 664 [21 Pac. (2d) 960].)

 During the course of the argument, counsel for the plaintiff referred to the fact that he could not offer a certain police report, and added: "They can produce it if they want to." Whereupon, the following colloquy took place:

"Mr. Higgins (Counsel for the defendants): I object to that statement at this time as prejudicial to the case of the defendant, and not a statement of the evidence, not an argument on the evidence. I ask the court to instruct the jury to disregard it.

"Mr. Greer (Counsel for the plaintiff): May I suggest that, where one side may produce evidence, which it lies within their sole power to produce, presumptively, that evidence, if produced, is against them.

"The Court: *That is true.*" (Italics added.)

It may be conceded that the police report being inadmissible, the defendants were not under any obligation to produce it and that their failure to do so could not be considered as a suppression of evidence. But the court's comment was addressed to the general statement of Mr. Greer. No exception was taken, and it was not, at the time, assigned as error. The transcript does not disclose what the court did about the remark of counsel. The plaintiff has brought up a fragmentary portion of the record only,— which does not contain the argument which preceded, or what followed it. There is not before us any record of the granting or denial of the motion to strike. The presumption being in favor of regularity, we must indulge in it, when confronted with a partial record of the matters which

surrounded the incident complained of. (*Filmer* v. *Davis*, 91 Cal. App. 195, 200 [266 Pac. 985].)

The defendants complain of the refusal of the trial court to submit seven interrogatories. These sought to secure special findings as to which of the two cars entered the intersection first; whether the plaintiff was driving close to the curb, and, if not, whether it was impracticable, and why, to travel upon the right side of the highway; whether the defendant made a complete stop before entering the intersection; in what gear the defendant's car was being operated; whether the driver of the defendant's car was guilty of negligence, and, if so, what acts or omission constituted such negligence. The submission of special interrogatories is discretionary. (Code Civ. Proc., sec. 625; *Estate of Witt*, 198 Cal. 407, 426 [245 Pac. 197]; *Oberholzer* v. *Hubbell*, 36 Cal. App. 16, 19 [171 Pac. 436]; *De Martini* v. *Wheatley*, 126 Cal. App. 230 [14 Pac. (2d) 869].) As the questions of negligence and contributory negligence were placed before the jury, by adequate instructions, the court did not abuse its discretion in refusing to submit the interrogatories or any of them. Moreover, the interrogatories might have caused confusion in the minds of the jurors. The defendant John Quackenbush was a minor up to and including February 16, 1933. He appeared in the case personally, through counsel. He had no general guardian and was not represented by a guardian *ad litem*. On April 13, 1933, he disaffirmed the judgment. The trial court declined to give effect to this disaffirmance and to set aside the judgment as to him.

It is elementary that when a minor is a party to an action, he must appear either by his general guardian or by a guardian *ad litem* appointed by the court for that purpose. (Code Civ. Proc., sec. 372.) The failure to appoint a guardian is a mere irregularity,—it is not a jurisdictional defect which renders the judgment void. (*Childs* v. *Lanterman*, 103 Cal. 387, 390 [37 Pac. 382, 42 Am. St. Rep. 121]; *Johnston* v. *Southern Pacific Co.*, 150 Cal. 535, 539 [89 Pac. 348, 11 Ann. Cas. 841].) The judgment, being voidable only, it may be disaffirmed by the minor upon his attaining majority. (*Gouanillou* v. *Industrial Acc. Com.*, 184 Cal. 418 [193 Pac. 937]; *Neilson* v. *Walker*, 105 Cal. App. 23 [286 Pac. 1091]; *Field* v. *Hughes*, 131 Cal.

App. 144 [20 Pac. (2d) 990].) If the minor becomes of age during the pendency of the proceedings and continues to participate therein, through counsel, his subsequent disaffirmance will not be given effect.

This upon the theory that his failure to disaffirm the judgment promptly amounts to laches, and indicates that he has suffered no loss of substantial rights, by not being represented by a guardian. (*Johnston* v. *Southern Pac. Co.,* *supra; King* v. *Wilson,* 116 Cal. App. 191 [2 Pac. (2d) 833]; *Carver* v. *Donin,* 139 Cal. App. 395 [33 Pac. (2d) 841].)

The justice of this rule is evident. The minor who reaches majority while a case against him is in progress should not be allowed to speculate upon the outcome, and then, if it be unfavorable, be relieved of its effect.

This is what occurred here. The minor was represented by the same counsel as his parents throughout the proceedings. He became of age on February 16, 1933. The trial was had February 21 to 27, 1933. The verdict was rendered on February 27, 1933. The notice of intention to move for a new trial was filed March 9, 1933. The disaffirmance occurred on April 13th, only three days before the motion for a new trial was actually heard and determined by the court. Under the circumstances, we feel that John Quackenbush has not been harmed by having the case proceed against him without the appointment of a guardian *ad litem,* and that his laches in failing to disaffirm promptly,—after attaining majority,—bars him from questioning the judgment.

 The defendants, while objecting to the reduction of the verdict by the court, as a condition of denying a new trial, now complain that the verdict in the reduced amount is nevertheless excessive.

At the time of the accident the plaintiff was forty-eight years old. She suffered a fracture of the left clavicle or collarbone. Following the accident she suffered great pain in the left shoulder. She was unable to sleep for three weeks, without taking opiates. At the time of the trial, two years after the accident, she was still suffering from the effects of the injury. The fracture had not healed. An orthopedic surgeon, Dr. John C. Wilson, testified that an operation (bone grafting) was necessary, which might or

might not be successful, and that such an operation might cost $2,500. Otherwise, the injury would be permanent. While the plaintiff had partial use of the arm, at the time of the trial she could not lift it above a certain position. She could not sleep on the left side of her body. Even in doing ordinary housework, she could not lift a quilt with the left hand, but had to use both hands. She could not turn a mattress at all. At the time of the accident she was receiving $50 a month for the work she was doing,— hotel maid work—and board for herself and her child.

Only those verdicts may be considered excessive which are so out of proportion with the injury suffered as to indicate plainly to the reviewing court that passion and prejudice motivated the jury in awarding the amount. (*McGlothin* v. *Larussa, supra; Barrett* v. *Harman,* 115 Cal. App. 283, 288 [1 Pac. (2d) 458].)

The trial court,—in the possession of visual facts relating to the extent of the disability which the word descriptions in the printed record do not reproduce graphically or adequately,—in the exercise of its discretion,—reduced the amount to $5,000. We cannot say that this amount is excessive.

The record being free from prejudicial error, the judgment and order are affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 10, 1934.