Angelina, Amado, José, Amelia, Rosa María, Angel Manuel, Gilberto y José Manuel Díaz Bermúdez, demandantes, apelados y apelantes, *v.* Sucesión de Ramón Díaz Román y de su esposa Manuela Mas Colón, etc., demandados y apelados; y José María Quiñones, demandado, apelante y apelado.

Núm. 9474.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Febrero 25, 1948.

250

*Luis Mercader*, abogado del demandado, apelante y apelado, Sr. Quiñones; *E. Pérez Casalduc*, abogado de los demandantes, apelados y apelantes; A. *Reyes Delgado*, abogado de la Sucn. Díaz Román, demandada y apelada.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Por escritura de 31 de octubre de 1928 ante el notario Antonio Suliveres, José Díaz López, de estado soltero, hipotecó la finca que se describe en la demanda, a favor de Ramón Díaz Román. La hipoteca se constituyó en garantía de un préstamo por $875.40, con intereses a razón de 8 por ciento anual, el cual debería pagarse en esta forma: $100 el 31 de octubre de 1931 y $775.40 en igual día y mes de 1932. Se estipuló, además, que la hipoteca se extendería, en caso de reclamación judicial, a dos créditos adicionales por $200 cada uno, para intereses y para costas, desembolsos y honorarios de abogado, respectivamente.

El 4 de octubre de 1933 Ramón Díaz Román instó procedimiento ejecutivo en cobro de la hipoteca. Reclamó $875.40, importe del principal del préstamo, $326.82 de intereses devengados hasta junio de 1933, a razón de 8 por ciento anual, más los que vencieren desde esa fecha, y además los $200 convenidos para costas, gastos y honorarios de abogado. Como para esa fecha José Díaz López había fallecido, el procedimiento se dirigió contra su alegada Sucesión, compuesta, según se alegó en el escrito inicial, de sus hijos naturales Angelina, Amado, José, Amelia, Rosa María, Angel Manuel, Gilberto y José Manuel Díaz, habidos con Margarita Bermúdez, la cual había muerto para aquella fecha. A virtud del procedimiento ejecutivo la finca fué adjudicada al acreedor Ramón Díaz Román, por escritura de venta judicial de 12 de marzo de 1934, por la cantidad de $800. Oportunamente tomó posesión de ella y la inscribió a su favor en el Registro de la Propiedad. El inmueble fué luego sucesivamente trasmitido a distintas personas, las cuales inscribieron sus respectivos títulos, siendo su último dueño el demandado

José María Quiñones, quien la inscribió a su favor el 17 de marzo de 1942.

El 26 de junio de 1945 los citados hijos naturales de José Díaz López radicaron demanda contra la Sucesión de Ramón Díaz Román y contra José María Quiñones, solicitando que se decretase la nulidad del procedimiento ejecutivo. En consecuencia, pidieron que se les restituyese la finca y se condenase a los demandados a pagarles $2,000 en que calcularon el valor de los frutos percibidos o dejados de percibir. Para el caso de que la corte resolviera que José María Quiñones era un tercero hipotecario, solicitaron que se condenase a los otros demandados solidariamente al pago de $1,500 en que estimaron el valor de la finca, más las otras cantidades antes indicadas.

Alegaron los demandantes que el procedimiento ejecutivo era nulo: (1) porque los demandados no fueron requeridos de pago legalmente; (2) porque se ordenó la venta de la finca para satisfacer, entre otras, la cantidad de $326.82 por concepto de intereses de mora ''cuando solamente se garantizó con hipoteca el pago de tales intereses hasta la suma de $200''; y (3) porque la cantidad que se hizo figurar como capital del préstamo incluía intereses usurarios.

La corte resolvió que la orden de remate en el procedimiento ejecutivo era nula por falta de jurisdicción. Basó su decisión en que no se obtuvo, a los efectos del requerimiento de pago, el nombramiento de un defensor judicial para los demandados, quienes eran todos menores de edad. Citó el artículo 56 del Código de Enjuiciamiento Civil y *Rodríguez v. Nadal viuda de Morell*, 45 D.P.R. 471, 494.([1]) Decidió, además, que José María Quiñones no era tercero porque el defecto del título constaba del Registro. En consecuencia, declaró nula la venta judicial hecha a favor de Ramón Díaz Román en el procedimiento ejecutivo; anuló las sucesivas

---

([1])La cita correcta de este caso es *Domínguez* v. *Nadal Vda. de Del Moral*, 45 D.P.R. 471, 494.

.enajenaciones incluyendo la que se hizo a favor de José María Quiñones; condenó a éste a restituir la finca a los demandantes, sin devolución de frutos y absolvió de la demanda a la Sucesión de Ramón Díaz Román. Por último, ordenó al Registrador de la Propiedad de Utuado que cancelase todas las inscripciones practicadas a partir de e incluyendo la venta judicial a favor de Quiñones y que procediera a inscribir la finca a favor de los demandantes como únicos y universales herederos de José Díaz López, "previo pago por ellos de la contribución de herencia, si es que algo están obligados a pagar por tal concepto, de acuerdo con la ley vigente a la muerte de dicho causante."

De esta sentencia apelaron José María Quiñones y los demandantes. Éstos se limitaron a apelar del pronunciamiento que desestimó su reclamación por concepto de frutos.

Arguyen los demandantes que es insostenible la contención del demandado Quiñones al efecto de que la corte adquirió jurisdicción sobre los menores en el procedimiento ejecutivo, por el solo hecho de haber sido éstos notificados personalmente de la orden de requerimiento y haberse notificado también a Adela Díaz, la persona bajo cuyo cuidado vivían.

De la orden de requerimiento, Exhibit *D* de los demandantes, aparece que dos de los menores demandados en el procedimiento ejecutivo eran mayores de catorce años. También resulta que la corte ordenó que el requerimiento se hiciera a todos los menores, así como a su tía Adela Díaz López, bajo cuya protección y cuidado vivían. Pero del certificado de diligenciamiento que el Márshal archivó en los autos resulta que no requirió a ninguno de los menores, limitándose a requerir de pago a la tía con quien vivían y bajo cuya protección se hallaban. Sin embargo, del Exhibit *B* del demandado Quiñones, que es una certificación expedida por el Registrador de la Propiedad, aparece que el Márshal cumplió estrictamente la orden de la corte requiriendo personal·

mente a todos los menores y a su tía en el indicado concepto.(²) Como se ve, hay un conflicto entre las constancias de los autos y las del Registro. Pero el derecho de Quiñones depende de lo que aparezca del Registro. Esto es así porque Quiñones no intervino en el acto o contrato inscrito,(³) es decir, en la escritura de venta judicial, y por el contrario, adquirió de quien en el Registro aparecía como dueño. Además inscribió su título sin que se haya demostrado que tuviera conocimiento personal del defecto del requerimiento, según aparecía del diligenciamiento del Márshal.(⁴) Establecidos estos principios procede ahora, en orden lógico, determinar si el diligenciamiento del requerimiento de pago, según se consignó en el Registro, es válido.

▮ Tratando del procedimiento por el cual debe regirse el requerimiento de pago, el artículo 168 del Reglamento para la ejecución de la Ley Hipotecaria prescribe que cuando el procedimiento se dirija tan sólo contra los bienes gravados con la hipoteca, se ajustará a las disposiciones de los artículos 128 y siguientes de la Ley, y a los del Reglamento, completadas las disposiciones por las del Código de Enjuiciamiento Civil. Como ni la Ley ni el Reglamento disponen la forma de verificar el requerimiento de pago cuando los demandados son menores de edad, y como dicho requerimiento fué diligenciado el 11 de diciembre de 1933, precisa recurrir

---

(²)La discrepancia entre el certificado del Márshal y lo que aparece del Registro se debió, quizás, a que en la escritura de venta judicial, luego de copiar la orden de requerimiento, se expresó que los demandados fueron requeridos ''como en autos consta''; y el Registrador interpretó la frase ''como en autos consta'' en el sentido de que el Márshal había procedido de conformidad con lo dispuesto en la orden de requerimiento.

(³)El artículo 27 de la Ley Hipotecaria prescribe:

''Para los efectos de esta Ley se considera como tercero aquél que no haya intervenido en el acto o contrato inscrito.''

(⁴)El artículo 34 de la Ley Hipotecaria, en su primer párrafo, prescribe:

''No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud del título anterior no inscrito o de causas que no resulten claramente del mismo registro.''

al artículo 93 del Código de Enjuiciamiento Civil, el cual en lo pertinente, dispone:

"Artículo 93.—La citación se hará mediante entrega de una copia de la misma, como sigue:

\*        \*        \*        \*        \*        \*        \*

"3.—Si fuese contra un menor de catorce años que residiere en la Isla, a dicho menor personalmente, así como también a su padre, madre o tutor; y si ninguno de éstos se encontrare en la Isla, entonces a cualesquiera de las personas que tuvieren a su cargo o cuidado dicho menor, o con quien viviere o en cuyo servicio estuviere empleado.

\*        \*        \*        \*        \*        \*        \*

"6.—En los demás casos al demandado personalmente."[5]

A nuestro juicio el Márshal, de acuerdo con lo que aparecía del Registro, cumplió con lo dispuesto en el artículo 93 antes citado, pues requirió personalmente a los dos demandados mayores de catorce años, y en cuanto a los restantes, los requirió personalmente y además a la persona que los tenía a su cargo o cuidado. Podría argüirse que el inciso 3 autoriza la citación de los menores de catorce años a través de las personas que los tuvieran a su cargo o cuidado solamente cuando su padre, madre o tutor *no se encontraren* en la Isla. A pesar de la cuidadosa búsqueda que hemos hecho, no hemos encontrado una sola decisión ni ninguna otra autoridad que sostenga que, en casos como el presente, la persona que tuviera a su cargo o cuidado al menor no pueda legalmente ser citada en su representación. Parece lógico que si dicha persona está suficientemente capacitada para representar al menor cuando no se encuentran en la Isla su padre, madre ni tutor, con igual razón puede representarlo cuando sus padres han muerto y no existe tutor. Donde existe la misma razón debe aplicarse la misma ley.

██ La corte inferior y los demandantes sostienen que en este caso debió nombrarse un defensor judicial para los menores de conformidad con el artículo 56 del Código de

---

[5] De conformidad con el citado artículo los mayores de catorce años se emplazarán en la misma forma que los mayores de edad.

Enjuiciamiento Civil. En efecto, el citado artículo prescribe que cuando un menor, demente o persona incapacitada es parte en un litigio, *deberá comparecer,* bien por medio de su tutor general, o de un defensor nombrado por la corte que entienda en el asunto. Interpretando el artículo 56 del Código de Enjuiciamiento Civil se ha resuelto por este Tribunal que el defecto de nombrar un defensor judicial en los casos en que el nombramiento proceda, es una irregularidad que no afecta la jurisdicción de la corte. *Trueba* v. *Martínez,* 33 D.P.R. 461. En el mismo sentido se ha pronunciado la Corte Suprema de California, interpretando el artículo 372 del Código de Enjuiciamiento Civil de aquel Estado, igual al 56 del nuestro. *Keane* v. *Penha,* 173 P.2d 835 (Cal. 1946); *Hughes* v. *Quackenbush,* 37 P.2d 99 (Cal. 1934); *Gouanillou* v. *Industrial Accident Commission,* 193 P. 937 (Cal. 1920); *Childs* v. *Lanterman,* 37 P. 382 (Cal. 1894) y 22 *Calif. Law Review* 576 (1933–34). Se ha resuelto, además, en California, que aunque el defecto no es jurisdiccional, la sentencia, como regla general, puede ser anulada a instancia del menor hasta dentro de un tiempo razonable después que haya llegado a la mayoridad. *Keane* v. *Penha,* supra; *Hughes* v. *Quackenbush,* supra; *Gouanillou* v. *Industrial Accident Commission,* supra; *Childs* v. *Lanterman,* supra, y 22 *Calif. Law Review,* supra. Del Registro no consta que se hubiera hecho nombramiento de defensor a los efectos del procedimiento ejecutivo. En consecuencia, José María Quiñones fué puesto sobre aviso de ese supuesto defecto. Si se hubiera tratado en este caso de un pleito distinto de un procedimiento ejecutivo, tendríamos que resolver que actuó correctamente la corte a quo al anular el procedimiento por no haberse nombrado un defensor judicial a los menores. Pero la naturaleza del procedimiento ejecutivo y el hecho de que el defecto no afecta la jurisdicción, nos impide llegar a esa conclusión. Esto es así porque el objeto del defensor judicial es para que represente al menor *en la comparecencia* que debe hacer, ya para instar o bien para defen-

derse de un pleito ·después de haber sido válidamente ci-- tado. En el procedimiento ejecutivo el demandado no tiene· derecho a comparecer, excepto en los tres · casos que enu-- mera el artículo 175 del Reglamento para la Ejecución de· la Ley Hipotecaria, a saber:

"1. Si se justificare documentalmente la existencia de un proce- dimiento criminal por falsedad del título hipotecario· en cuya virtud se proceda, en ·que se haya admitido querella o dictado auto de pro- cesamiento.

"2. Si se interpusiere una tercería de dominio, acompañando inexcusablemente con ella título de propiedad de la finca de que se trate, inscrito a favor del tercerista con fecha anterior a la ins- cripción del crédito del ejecutante y no cancelado en el Registro.

"3. Si se presentare certificado del Registradór, expresivo de quedar cancelada la hipoteca en virtud de la cual se proceda, o· copia auténtica de la escritura pública de cancelación de la misma, con la nota de presentación en alguno de los Registros en donde se haya de tomar razón de ella, otorgada por el actor o por sus causantes o causahabientes, acreditándose también documentalmente el título de transmisión· en su caso."

De los autos fácilmente se infiere que los motivos a que se refiere el artículo 175 que acabamos de transcribir, no exis- tieron en el procedimiento ejecutivo contra los menores ni se insinúa siquiera en la demanda de nulidad del procedi- miento ejecutivo la existencia de tales motivos. Por consi- guiente, ningún perjuicio se causó a los menores por no ha- berles nombrado un defensor judicial en un caso en que ellos, aun representados por el defensor, no hubieran podido com- parecer. Cf. State v. Hodge, 42 S. E.2d 23 (W. Va. 1947). La ley no requiere cosas inútiles y el espíritu que inspira al moderno procedimiento está expresado en el art. 142 del Có- digo de Enjuiciamiento Civil, al prescribir:

"En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no· afecten a lo esencial de los derechos de las partes, y no se revocará· o *invalidará ningún fallo* por razón de dicho error o defecto." (Bastardillas nuestras.)

El caso de *Domínguez* v. *Nadal Vda. de Del Moral*, supra, no es aplicable. Allí la incapacitada era parte demandante y se dijo por este Tribunal:

"De acuerdo con el artículo 56 del Código de Enjuiciamiento Civil, cuando un menor, demente o persona incapacitada es parte en un litigio, *deberá comparecer* bien por medio de su tutor general o de un defensor nombrado por la corte que entienda en el asunto, en cada caso, o por el juez de la misma." (Pág. 495). (Bastardillas nuestras.)

■■ Ya hemos indicado que también se alegó como causa de nulidad el hecho de haberse cobrado por el ejecutante intereses por la cantidad de $326.82 cuando en la escritura solamente se había asignado para esa atención la cantidad de $200.(6) La fijación de un crédito para intereses tiene por objeto proteger a posteriores adquirentes de la finca o de un crédito hipotecario sobre la misma. Pero cuando se ejecutó la hipoteca no había posteriores adquirentes ni más acreedor hipotecario que Ramón Díaz Román, pues los herederos de José Díaz López, por ser la continuación de la personalidad de su causante, no podían ser terceros con respecto al acreedor Ramón Díaz Román. Por consiguiente, el cobro de los $326.82 por intereses adeudados no invalida el procedimiento, a pesar de que en la escritura de hipoteca se fijaren $200 para esa atención. *Torres* v. *Fernández*, 65 D.P.R. 622.

Apareciendo del Registro que los menores demandados en el procedimiento ejecutivo fueron legalmente requeridos de pago puesto que todos fueron requeridos personalmente y los menores de catorce años, además lo fueron por conducto de la persona a cuyo cuidado se hallaban, tenemos que resolver que José María Quiñones es un tercero de conformi-

---

(6) En el escrito inicial se alega que esa cantidad fué designada para intereses de mora; pero es un error porque en la escritura de hipoteca no se mencionan tales intereses.

dad con el artículo 34 de la Ley Hipotecaria y que, por consiguiente, su título es válido.[7]

La conclusión a que hemos llegado hace innecesario considerar el recurso interpuesto por los demandantes, limitado como está al pronunciamiento que les denegó su reclamación por concepto de frutos.

*Procede revocar la sentencia apelada y dictar otra declarando sin lugar la demanda, con costas a los demandantes.*

---

[7] Aunque se alegó como motivo de nulidad el haberse cobrado intereses usurarios, no hubo prueba de esa alegación, pero aunque la hubiera habido, esa circunstancia no constaba del Registro, y por lo tanto, no perjudicó a José María Quiñones.