[Civ. No. 14024. First Dist., Div. Two. Dec. 6, 1949.]

J. B. ADAMS, Appellant, v. CHARLES L. ALLEN et al., Respondents.

Frank C. S. Pedersen and Robert L. Ward for Appellant.

Joseph G. Gallagher for Respondents.

GOODELL, J.—Plaintiff, as assignee of The Emporium, a San Francisco department store, sued for $2,705.95 as owing for merchandise. Defendant Ellis Henderson admitted owing $10.76 but denied owing any more, and judgment was entered for $10.76 against her. While the plaintiff appealed from the whole of the judgment we assume the appeal was addressed only to that part of the judgment which denied a recovery for the difference between $10.76 and $2,705.95.

The court found that defendant Ellis Henderson did not incur any indebtedness after 1945; that the charges in question were incurred in December, 1947, but were not made or authorized by her "nor did she sign the sales slips thereof; that the simulation of her signature upon the sales slips was a forgery."

The only question is whether these findings are sustained by the evidence.

On May 12, 1943, defendant Ellis Henderson opened a charge account at The Emporium, which issued to her a "Charga-plate" containing her signature. Under the store's routine a sale, if under $25, would be made on credit if the signature on the sales slip corresponded with that on the plate held by the customer.

Ellis Henderson admitted making purchases with her "Charga-plate," but testified that she paid her bills monthly up to May, 1945, excepting the $10.76 balance.

She testified she had evidently lost the plate as she had not seen it since August, 1947, and never thereafter attempted to buy on credit at The Emporium. There is no claim that between May, 1945, and December, 1947, any charge was made against the account. From December 1st to 27th, however, there were 173 sales charged against the account (each under $25) aggregating $2,695.19, all negotiated with Ellis Henderson's "Charga-plate." This averages 7½ sales a day in 23 shopping days. On one day there were 17 sales, each made in a different department.

Several of Ellis Henderson's signatures, including those she wrote in the courtroom, were used as exemplars. A handwriting expert testified that in his opinion all the signatures on the 173 December sales slips were written by the person who wrote the exemplars. Defendant Ellis Henderson denied that she wrote any of them.

Appellant contends that the respondent's testimony is inherently improbable and that the court's finding of forgery

is without evidentiary support, relying on such cases as *De Arellanes* v. *Arellanes,* 151 Cal. 443 [90 P. 1059].

The rule is stated in *Powell* v. *Powell,* 40 Cal.App. 155, 158 [180 P. 346], as follows: "To warrant it (an appellate court) in determining there is no substantial evidence because of inherent improbability, there must exist either a physical impossibility of the evidence being true, or a state of facts so clearly apparent that nothing need be assumed nor any inferences drawn to convince the ordinary mind of the falsity of the story." In the leading case of *Austin* v. *Newton,* 46 Cal.App. 493, 498 [189 P. 471], the court said: "We cannot reverse upon the ground that the finding of negligence is contrary to the evidence unless we can see that the fact as found contravenes recognized physical laws, and that therefore it is impossible that the accident could have been due to the negligence alleged in the complaint."

There is nothing unusual about the loss of the plate—a light metal device about once and a half the size of an Annapolis postage stamp—and defendant's testimony that the 173 signatures were not hers did not involve any inherent improbability. Her testimony simply raised an acute conflict on an issue of fact. It was within the realm of possibility that the signatures were forged. However, the burden was not on the defendant to so prove, but on the plaintiff to prove them genuine. The gist of the expert's testimony was that it would be "mathematically impossible" for a person to successfully imitate a signature as many as 173 times under shopping conditions. This was a matter of opinion and however extraordinary the feat of wholesale simulation, it was not a physical impossibility.

The last attempt to use the plate was on December 27, 1947 at about 5:30 p. m., when a woman selected a $17.41 lamp. The saleswoman phoned the credit department (because the lamp was breakable) whereupon the woman gave an excuse and departed. Shortly after this incident defendant Ellis Henderson called at plaintiff's office at his request. The saleswoman was brought in to identify her as the woman who had shopped for the lamp but apparently without hesitation she said defendant was not the woman. At the trial the saleswoman testified that "To me she looks the same, though I wouldn't swear to it." This hesitant and equivocal testimony, when taken in connection with her definite failure to make the identification shortly after the incident, raised a question which might well have been decisive.

Moreover the defendant testified that on December 27 she was at work from 4 p. m. until 12 p. m., and in this she was corroborated. She also testified definitely that she did not visit The Emporium on that day. She admitted making several purchases at The Emporium during December, 1947, but said she paid cash, assuming that she no longer had credit.

Defendant Charles L. Allen was joined on the theory that he was the husband of defendant Ellis; that the $10.76 admittedly owing by her was for necessaries, and that the judgment (if only for $10.76) should have run against him as well. There is in evidence a letter written by defendant Ellis to The Emporium in March, 1946 in which she states that she had married Charles L. Allen. There is evidence as well that defendants described themselves in another document as husband and wife. Both, however, testified that they were not married, and the court so found. The $10.76 indebtedness had been contracted by defendant Ellis Henderson before May, 1945; there was no proof as to the date of the claimed marriage. Indeed there is no allegation in the complaint that the defendants were husband and wife. Hence there was no basis whatever for holding defendant Charles L. Allen on the $10.76 debt (see *White* v. *Gobey,* 130 Cal.App. Supp. 789 [19 P.2d 876]; also, Civ. Code, § 170.)

There is ample evidence to support the findings.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.